Joseph J. Tabacco, Jr. (75484)
Email: jtabacco@bermandevalerio.com
James Magid (233043)
Email: jmagid@bermandevalerio.com
**BERMAN DeVALERIO**
425 California Street, Suite 2100
San Francisco, CA 94104
Telephone: (415) 433-3200
Facsimile: (415) 433-6382

*Attorneys for Plaintiff California Public Employees' Retirement System*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA PUBLIC EMPLOYEES' RETIREMENT SYSTEM,<br><br>Plaintiff,<br><br>v.<br><br>MOODY'S CORP., MOODY'S INVESTORS SERVICE, INC., THE MCGRAW-HILL COMPANIES, INC., FITCH, INC., FITCH GROUP, INC., FITCH RATINGS, LTD. AND DOES 1 THROUGH 100,<br><br>Defendants. | Case No. CV 09 3628 SI<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION TO REMAND FOR LACK OF SUBJECT MATTER JURISDICTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: October 23, 2009<br>Time: 9:00 a.m.<br>Ctrm: 10<br>The Honorable Susan Illston |

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION ....................1

MEMORANDUM OF POINTS AND AUTHORITIES ....................1

I. INTRODUCTION ....................1

II. PROCEDURAL BACKGROUND ....................3

III. ARGUMENT ....................4

A. Defendants Bear the Heavy Burden of Establishing Federal Subject Matter Jurisdiction ....................4

B. CalPERS Is Not a Citizen for Diversity Purposes Because It Is an Arm of the State ....................5

1. CalPERS' Structure and Treatment Under California Law Make It an Arm of the State ....................5

2. Under California Law, CalPERS Is Treated as an Arm of the State ....................7

3. Courts That Have Considered the Issue Have Concluded that CalPERS Is an Arm of the State ....................9

C. Other Public Employee Retirement Systems Structured Similarly To CalPERS Are Regularly Determined to Be Arms Or Alter-Egos of the State ....................11

D. The Three Pleadings From Other Litigations Attached to Defendants' Notice of Removal Do Not Create Diversity Jurisdiction Because They Are Unchallenged Fact Allegations, Not Legal Findings of Citizenship for Diversity Purposes ....................12

E. This Is Not a Class Action and Therefore the Class Action Fairness Act Cannot Support Subject Matter Jurisdiction Here ....................13

IV. CONCLUSION ....................14

# TABLE OF AUTHORITIES

## CASES

*21 Properties, Inc. v. Romney*, 360 F. Supp. 1322 (N.D. Tex. 1973) .......... 12

*Abrego v. Dow Chem. Co*, 443 F.3d 676 (9th Cir. 2006) .......... 4

*Am. Int'l Specialty Lines Ins. Co. v. Reimer & Koger Assocs.*, 874 F. Supp. 324 (D. Kan. 1995) .......... 12

*Ames v. Kansas*, 111 U.S. 449 (1884) .......... 6, 15

*Befitel v. Global Horizons, Inc.*, 461 F. Supp. 2d 1218 (D. Haw. 2006) .......... 6

*Burns v. Windsor Ins. Co.*, 31 F.3d 1092 (11th Cir. 1994) .......... 5

*Concilio Evangelico de Puerto Rico v. Negron*, 178 F. Supp. 2d 49 (D.P.R. 2001) .......... 5

*De Long Corp. v. Or. State Highway Comm'n*, 233 F. Supp. 7 (D. Or. 1964) .......... 6

*Emrich v. Touche Ross & Co.*, 846 F.2d 1190 (9th Cir. 1988) .......... 4, 5

*Ernst v. Rising*, 427 F.3d 351 (6th Cir. 2005) .......... 6, 12

*Fifty Assocs. v. Prudential Ins. Co. of Am.*, 446 F.2d 11867 (9th Cir. 1970) .......... 13

*Fitzpatrick v. Bitzer*, 519 F.2d 559 (2d Cir. 1975) .......... 11

*Franceschi v. Schwartz*, 57 F.3d 828 (9th Cir. 1995) .......... 6

*Gaus v. Miles, Inc.*, 980 F.2d 564 (9th Cir. 1992) .......... 5

*Haywood v. Am. River Fire Protection Dist.*, 67 Cal. App. 4th 1292 (3d Dist. 1998) .......... 7

*JMB Group Trust IV v. Pa. Mun. Ret. Sys.*, 986 F. Supp. 534 (N.D. Ill. 1997) .......... 12

*Kansas Pub. Employees Ret. Sys. v. Boatmen's First Nat'l Bank*, 982 F. Supp. 806 (D. Kan. 1997) .......... 11

*McGinty v. N.Y.*,
251 F.3d 84 (2d Cir. 2001) ....................6, 12

*Mello v. Woodhouse*,
755 F. Supp. 923 (D. Nev. 1991)....................11

*Mitchell v. L.A. Cmty. Coll. Dist.*,
861 F.2d 198 (9th Cir. 1988) ....................6

*Moor v. County of Alameda*,
411 U.S. 693 (1973) ....................2, 5, 6

*Morongo Band of Mission Indians v. Cal. State Bd. of Equalization*,
858 F.2d 1376 (9th Cir. 1988) ....................2, 5

*Nev. v. Pioneer Cos.*,
245 F. Supp. 2d 1120 (D. Nev. 2003)....................7

*Partington v. Gedan*,
923 F.2d 686 (9th Cir. 1991) ....................4

*Regents of the Univ. of Cal. v. Doe*,
519 U.S. 425 (1997) ....................6, 13

*Retired Public Employees' Ass'n, Chapter 22 v. Cal.*,
614 F. Supp. 571 (N.D. Cal. 1984)....................11

*Rockwell Int'l Credit Corp. v. United States Aircraft Ins. Group*,
823 F.2d 302 (9th Cir. 1987) ....................4

*State ex rel. Pension Obligation Bond Comm. v. All Persons Interested*,
152 Cal. App. 4th 1386 (3d Dist. 2007) ....................7, 8

*Stewart v. Baldwin County Bd. of Educ.*,
908 F.2d 1499 (11th Cir. 1990)....................10

*United Food & Commercial Workers Union, Local 919 v. Centermark Props. Meriden Square, Inc.*,
30 F.3d 298 (2d Cir. 1994)....................13

*United States v. S.C.*,
445 F. Supp. 1094 (D.S.C. 1977) ....................11

*Westly v. Bd. of Admin.*,
105 Cal. App. 4th 1095 (3d Dist. 2003) ....................2, 3, 8, 9, 11

**UNREPORTED DECISIONS**

*Dep't of Fair Employment & Hous. v. Lucent Techs., Inc.*,
No. C 07-3747 PJH,
2007 U.S. Dist. LEXIS 77360 (N.D. Cal. Oct. 9, 2007) ....................7

*Kaplan v. California Pub. Employees' Ret. Sys.*,
No. C 98-1246 CRB,
1998 U.S. Dist. LEXIS 14040 (N.D. Cal. Sept. 3, 1998) ........................................................11

*Regents of the Univ. of Cal. v. Indem. Ins. Co. of N. Am.*,
No. C 07-2721 PJH,
2007 U.S. Dist. LEXIS 58700 (N.D. Cal. Aug. 3, 2007) ........................................................14

*State of Cal. Pub. Employees' Ret. Sys. v. Strite Rite Children's Group, Inc.*,
No. 96-6558-CIV-DAVIS (S.D. Fla. Dec. 3, 1996)............................................................5, 10

**STATUTES**

28 U.S.C. §§ 1332(a) ..........................................................................................................4

28 U.S.C. §§ 1332(d) ..........................................................................................................1

28 U.S.C. §§ 1332(d)(1)(B) ..................................................................................................14

28 U.S.C. §§ 1332(d)(2) .....................................................................................................14

28 U.S.C. §§ 1332(d)(11)(A)................................................................................................14

28 U.S.C. §§ 1441(a) ..........................................................................................................4

28 U.S.C. §§ 1441 (b) ..........................................................................................................4

28 U.S.C. § 1447..................................................................................................................1

28 U.S.C. §§ 1453................................................................................................................1

Cal. Civ. Code §§ 1709.........................................................................................................4

Cal. Civ. Code §§ 1710.........................................................................................................4

CAL. CONST. art. XVI, § 17.............................................................................................2, 7, 8

CAL. GOV'T CODE § 7502 ......................................................................................................3

CAL. GOV'T CODE §§ 7504 ....................................................................................................3

CAL. GOV'T CODE §9350. ......................................................................................................2

CAL. GOV'T CODE § 12320 ....................................................................................................8

Cal. Gov. Code § 12920........................................................................................................7

CAL. GOV'T CODE § 20000 ................................................................................................2, 7

CAL. GOV'T CODE § 20001 ................................................................................................2, 7

CAL. GOV'T CODE § 20002 ................................................................................................2, 7

CAL. GOV'T CODE § 20090 ....8
CAL. GOV'T CODE § 20170 ....7
CAL. GOV'T CODE § 20232 ....9
CAL. GOV'T CODE § 20233 ....9
CAL. GOV'T CODE § 20235 ....9
CAL. GOV'T CODE § 20237 ....9
CAL. GOV'T CODE § 20814 ....3
CAL. GOV'T CODE §§ 20096 ....3, 8
CAL. GOV'T CODE §§ 20096.5 ....3, 8
CAL. GOV'T CODE §§ 20190 ....8
CAL. GOV'T CODE §21670 ....2
CAL. GOV'T CODE §22750 ....2
CAL. GOV'T CODE §22960 ....2
CAL. GOV'T CODE §22970 ....2
CAL. GOV'T CODE §75000 ....2
CAL. GOV'T CODE §75500 ....2

**OTHER AUTHORITIES**

Pfander, James E., *Rethinking the Supreme Court's Original Jurisdiction in State-Party Cases*, 82 Cal. L. Rev. 555, 659 (May 1994) ....5

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on October 23, 2009, at 9:00 a.m., or as soon thereafter as the matter may be heard, before the Honorable Susan Illston, United States District Judge, Courtroom 10, 19th Floor, 450 Golden Gate Ave., San Francisco, California, Plaintiff State of California Public Employees' Retirement System ("CalPERS") will, and hereby does, move the Court for an order pursuant to 28 U.S.C. § 1447 remanding this case to state court.

This motion is based on this Notice of Motion and Motion and Memorandum of Points and Authorities in support thereof, the pleadings and records on file in this case, and other such matters and argument as the Court may consider at the hearing on this motion.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

This motion arises from the removal of Plaintiff CalPERS' lawsuit against the three major credit rating agencies. The Defendants[1] purport to base removal on 1) diversity jurisdiction, and 2) the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332(d), 1453 ("CAFA"). Neither constitutes grounds for federal subject matter jurisdiction here. Accordingly, CalPERS moves pursuant to 28 U.S.C. § 1447 for remand to California Superior Court, County of San Francisco.[2]

*First*, the United States Supreme Court has long recognized that a political subdivision of a state, if it is "the arm or *alter ego* of the State," is not a citizen of the state for diversity

[1] The "Defendants" are Moody's Corporation, Moody's Investors Service, Inc., The McGraw-Hill Companies, Inc., Fitch, Inc., Fitch Group, Inc., and Fitch Ratings, Ltd.

[2] Two removal notices were filed. The first-filed notice of removal was submitted on behalf of all the Defendants ("Notice of Removal"), and was assigned to the Honorable Judge Susan Illston as Case No. C 09-03628. A second notice of removal was filed individually by Fitch, Inc., Fitch Group, Inc., Fitch Ratings, Ltd. (collectively "Fitch") ("Fitch Notice of Removal") and was assigned to the Honorable Joseph C. Spero as Case No. C 09-03629. Both notices of removal seek to remove the same underlying case. Defendants subsequently moved to relate their two notices (*see* Defendants' Motion To Relate (Docket #6)) and Plaintiff responded in support of that motion (*see* Docket # 7). While both notices of removal claim diversity jurisdiction, the Fitch Notice of Removal also purports to base removal on the Class Action Fairness Act. The Fitch Notice of Removal, which resulted in the opening of a second federal case based on the same state court action, is procedurally improper. CalPERS makes this single, consolidated motion to remand in the first-filed case, but nevertheless addresses both notices of removal.

purposes. *Moor v. County of Alameda*, 411 U.S. 693, 717 (1973) (citation and footnote omitted). Consequently, there can be no diversity jurisdiction supporting removal where, as here, the plaintiff is a state agency or governmental body that is, in effect, the "arm" or "alter ego" of the state. *Morongo Band of Mission Indians v. Cal. State Bd. of Equalization*, 858 F.2d 1376, 1381 (9th Cir. 1988).

Whether CalPERS is an arm of the state of California is a question of law, easily answered by examining the state laws which created and govern CalPERS. That inquiry here compels the conclusion that CalPERS is an arm of the State of California, and consequently is not a citizen for diversity purposes. CalPERS was created by, and is governed according to, the California State Constitution and California Government Code. CAL. CONST. art. XVI, § 17 (amended 1992), CAL. GOV'T CODE §§ 20000, *et seq*. It is a unit of the California State and Consumer Services Agency (CAL. GOV'T CODE § 20002), and was established to further a government function; namely, "to effect economy and efficiency in the public service." CAL. GOV'T CODE § 20001. CalPERS is responsible for providing retirement[3] and health benefits,[4] as well as administering supplemental retirement savings plans[5] for approximately 1.6 million public employees, retirees, and their families. The Public Employees' Retirement Fund is the primary fund administered by CalPERS. CalPERS employees are state employees subject to state civil service rules. *Westly v. Bd. of Admin.*, 105 Cal. App. 4th 1095, 1113 (3d Dist. 2003).

The State of California provides funding from the State's general fund to pay CalPERS' benefits when those benefits come due. CAL. GOV'T CODE § 20814; *see also* § 75107; *Westly*, 105 Cal. App. 4th at 1116. The majority of CalPERS' Board of Administration are elected

---

[3] *See e.g.*, the Public Employees' Retirement System (CAL. GOV'T CODE § 20000, *et seq.*), Legislators' Retirement System (CAL. GOV'T CODE §9350 et seq.), Judges' Retirement System (CAL. GOV'T CODE §75000 *et seq.*)(JRF), and Judges' Retirement System II (CAL. GOV'T CODE §75500 *et seq.*)

[4] *See e.g.*, the Public Employees' Medical and Hospital Care Act, CAL. GOV'T CODE §22750 *et seq.*

[5] *See e.g.*, the State Peace Officers' and Firefighters' Defined Contribution Plan Fund (SPQFF) (CAL. GOV'T CODE §22960 *et seq.*), the Public Employees' Deferred Compensation Program (CAL. GOV'T CODE §21670 *et seq.*), and the Supplemental Contributions Program Fund (CAL. GOV'T CODE §22970 *et seq.*).

constitutional officers or appointed by California government leaders. The other seats on the CalPERS Board are elected pursuant to elections certified by the Secretary of State. CAL. GOV'T CODE at §§ 20096, 20096.5. CalPERS makes regular reports covering all aspects of its operations (CAL. GOV'T CODE §§ 7502-04, 20220-38), and is subject to audits by the Office of the State Controller. CAL. GOV'T CODE § 7502. For these reasons and the other reasons set forth below, CalPERS is the "arm of the state" of California as a matter of law. Consequently, it is not a "citizen" for purposes of diversity jurisdiction.

*Second*, Defendant Fitch's argument – not joined by the other Defendants – that CAFA constitutes grounds for removal borders on the frivolous. The lawsuit here is an individual action to recover investment losses CalPERS sustained due to Defendants' negligent misrepresentations and negligent interference with prospective economic advantage. It is not a "class action," and Defendant Fitch, unsurprisingly, provides zero legal authority for the proposition that an individual action is within the scope of CAFA.

Defendants having failed to provide any supportable basis for subject matter jurisdiction, Plaintiff's motion for remand to its chosen state court forum should be granted.

## II. PROCEDURAL BACKGROUND

CalPERS filed suit against Defendants on July 9, 2009 in the Superior Court of California, County of San Francisco. The action alleges Defendants were intimately involved in structuring three Structured Investment Vehicles ("SIVs") and then negligently gave the SIVs their highest investment grade ratings ("AAA" or the equivalent), despite the SIVs' faulty structures and high concentrations of risky subprime mortgages. Short-term debt securities issued by the SIVs ultimately were offered to CalPERS in 2006 via private placements, sales only made possible by the "AAA" ratings. The SIVs, however, soon defaulted on their payment obligations to Plaintiff, causing hundreds of millions of dollars in losses.

CalPERS asserts in its complaint that it is suing in its capacity as an "arm of the State of California, operating pursuant to the California Constitution and the California Government Code." Complaint for Negligent Misrepresentation Under Common Law and Cal. Civ. Code §§ 1709 and 1710 and Negligent Interference with Prospective Economic' Advantage ("Complaint")

¶ 10.[6] CalPERS asserts common law and state statutory claims for negligent misrepresentation and negligent interference with prospective economic advantage. No federal question is presented.

On August 7, 2009, Defendants removed. The Notice of Removal, filed on behalf of all Defendants, asserts that removal is proper under 28 U.S.C. §§ 1441(a) and (b) because the parties are "diverse" within the meaning of 28 U.S.C. §§ 1332(a), despite the Complaint's allegation that CalPERS is an "arm of the state" is not a "citizen" of California for diversity purposes. This case was assigned to the honorable Judge Susan Illston.[7]

## III. ARGUMENT

### A. Defendants Bear the Heavy Burden of Establishing Federal Subject Matter Jurisdiction

The removing parties bear the burden of establishing federal jurisdiction under the removal statute. *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1195 (9th Cir. 1988); *see Rockwell Int'l Credit Corp. v. United States Aircraft Ins. Group*, 823 F.2d 302, 304 (9th Cir. 1987) ("Seeking removal, [defendant] had the burden of establishing diversity."), *overruled on other grounds by Partington v. Gedan*, 923 F.2d 686, 688 (9th Cir. 1991); *Abrego v. Dow Chem. Co.*, 443 F.3d 676, 685 (9th Cir. 2006) ("under CAFA the burden of establishing removal jurisdiction remains, as before, on the proponent of federal jurisdiction.").

The burden is a heavy one. The removal statues are strictly construed against removal. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992); *Emrich*, 846 F.2d at 1195. If there is any doubt as to the right of removal, federal jurisdiction must be rejected. *Gaus*, 980 F.2d at 566. The "right to remove and plaintiff's right to choose his forum are not on equal footing." *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994) ("where plaintiff and defendant clash about jurisdiction, uncertainties are resolved in favor of remand"); *Concilio Evangelico de Puerto Rico v. Negron*, 178 F. Supp. 2d 49, 51 (D.P.R. 2001).

---

[6] The Complaint was submitted as "Exhibit A" to both Notices of Removal.

[7] The subsequently-filed Fitch Notice of Removal appears to have been procedurally unnecessary. *See supra* at n. 2.

**B. CALPERS Is Not a Citizen for Diversity Purposes Because It Is an Arm of the State**

CalPERS' structure, function, and continued control by the Legislature and other state agencies compels the conclusion that CalPERS is an arm of the state. At least one federal district court has concluded precisely that in the remand context. The court remanded based on its finding that CalPERS is an "arm of the state," because of how state law defines CalPERS, and because of the degree of control the state exercises over CalPERS. *See State of Cal. Pub. Employees' Ret. Sys. v. Strite Rite Children's Group, Inc.*, No. 96-6558-CIV-DAVIS (S.D. Fla. Dec. 3, 1996), attached as Exhibit B to the Declaration of James C. Magid in Support of Plaintiff's Motion To Remand ("Magid Decl."), filed concurrently herewith. Moreover, other state pension funds structured similarly to CalPERS are regularly treated by courts as "arms of the state." *See infra* sec. III.C.

**1. CalPERS' Structure and Treatment Under California Law Make It an Arm of the State**

It is well-settled that a state is not a citizen for purposes of diversity jurisdiction. *Moor*,, 411 U.S. at 717. In addition, an "arm or alter ego of the State" is also not a citizen for diversity purposes. *Id*.; *Morongo Band of Mission Indians*,, 858 F.2d at 1381.

The first U.S. Congress, in the Judiciary Act of 1789, deliberately excluded from federal diversity jurisdiction those lawsuits in which a state is a party. Congress meant to "preserve state court competence to hear actions brought by state plaintiffs, inasmuch as the lower federal courts had been given no authority hear such disputes." Pfander, James E., *Rethinking the Supreme Court's Original Jurisdiction in State-Party Cases*, 82 Cal. L. Rev. 555, 659 (May 1994); *see Ames v. Kansas*, 111 U.S. 449, 463-65 (1884) (explaining that lower federal courts were granted jurisdiction in only select few instances when a state is a party). Consequently, federal courts strictly construe the diversity statute "to limit states' appearances in federal court." *Befitel v. Global Horizons, Inc.*, 461 F. Supp. 2d 1218, 1222 (D. Haw. 2006). A similar rationale underlies the Eleventh Amendment's provision of immunity to states from being sued as defendants in

federal court. *Id*.[8]

To determine if an entity is an "arm of the state," a court looks "to the way state law treats the entity . . . to assess the extent to which the entity derives its power from the State and is ultimately regulated by the State." *Franceschi v. Schwartz*, 57 F.3d 828, 831 (9th Cir. 1995) (citation, internal citations and quotation marks omitted); *see also Moor*, 411 U.S. at 717-18 (looking to California law); *Mitchell v. L.A. Cmty. Coll. Dist.*, 861 F.2d 198, 201 (9th Cir. 1988) (same). The U.S. Supreme Court requires that whatever analysis is used, the paramount consideration is how the entity in question is structured and treated under state law. *See Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 n.5 (1997) (the federal diversity question "can be answered only after considering the provisions of state law that define the agency's character"); *see also De Long Corp. v. Or. State Highway Comm'n*, 233 F. Supp. 7, 10 (D. Or. 1964) ("the federal courts will be influenced by state decisions, dealing with the character and status of state agencies").[9]

---

[8] Indeed, some courts have analyzed the question of whether an entity is a state citizen or instead an "arm" or "alter ego" of the state for diversity purposes by using factors associated with Eleventh Amendment sovereign immunity analysis. *See, e.g.*, *Befitel*, 461 F. Supp. 2d at 1222 (explaining arm-of-the-state inquiry for diversity purposes and Eleventh Amendment purposes and analyzing "(1) whether a money judgment would be satisfied out of state funds, (2) whether the entity performs central governmental functions, (3) whether the entity may sue or be sued, (4) whether the entity has the power to take property in its own name or only the name of the state, and (5) the corporate status of the entity.") (citation omitted); *Ernst v. Rising*, 427 F.3d 351, 359 (6th Cir. 2005) ("(1) whether the state would be responsible for a judgment against the entity in question; (2) how state law defines the entity; (3) what degree of control the state maintains over the entity; and (4) the source of the entity's funding.") (citation omitted); *McGinty v. N.Y.*, 251 F.3d 84, 95-96 (2d Cir. 2001) ("(1) how the entity is referred to in its documents of origin; (2) how the governing members of the entity are appointed; (3) how the entity is funded; (4) whether the entity's function is traditionally one of local or state government; (5) whether the state has a veto power over the entity's actions; and (6) whether the entity's financial obligations are binding upon the state.")

Using either type of analysis, the outcome is the same here: CalPERS is an arm of the state.

[9] Other courts in this Circuit have looked exclusively at how the entity is structured under state statute, without resort to any factors associated with the Eleventh Amendment. *See Dep't of Fair Employment & Hous. v. Lucent Techs., Inc.*, No. C 07-3747 PJH, 2007 U.S. Dist. LEXIS 77360 (N.D. Cal. Oct. 9, 2007) (concluding that Department of Fair Employment Housing to be the alter ego of the State of California under Cal. Gov. Code § 12920); *Nev. v. Pioneer Cos.*, 245 F. Supp. 2d 1120, 1129 (D. Nev. 2003) (analyzing Nevada law governing the Colorado River Commission and concluding that it is "agent of the State of Nevada" and so not a citizen for diversity purposes).

Analysis of CalPERS's structure and treatment under California law, set forth next, shows CalPERS is an arm of the State of California.

**2. Under California Law, CalPERS Is Treated as an Arm of the State**

CalPERS is a creature of the California State Constitution, as well as statutory law. CAL. CONST. art. XVI, § 17, CAL. GOV'T CODE §§ 20000, *et seq*. In 1930, the California State Constitution was amended to empower the Legislature to create a state employee retirement system. *State ex rel. Pension Obligation Bond Comm. v. All Persons Interested*, 152 Cal. App. 4th 1386, 1391 (3d Dist. 2007). Pursuant to that power, the California Legislature set up the predecessor of CalPERS, the State Employees' Retirement System. *Id.* The retirement system exists for the benefit of members and retired members of CalPERS. CAL. GOV'T CODE § 20170. CalPERS exists to achieve a government purpose: to provide retirement and related benefits to current and former public employees and their dependents, which is in the public interest of securing and maintaining a public sector workforce necessary to adequately perform the functions of government. *See Haywood v. Am. River Fire Protection Dist.*, 67 Cal. App. 4th 1292, 1304 (3d Dist. 1998); CAL. GOV'T CODE § 20001 (defining the purpose of the fund "to effect economy and efficiency in the public service … and to that end provide a retirement system consisting of retirement compensation and death benefits.").

Under state law, CalPERS is defined as "a unit of the State and Consumer Services Agency," CAL. GOV'T CODE § 20002; see also Organization Chart of the State of California, attached as Exhibit A to the Magid Del. Critically, CalPERS' retirement fund is considered state money within the State Treasury. CAL. GOV'T CODE § 12320; *Westly*, 105 Cal. App. 4th at 1116 ("Whatever else the CalPERS fund may be, section 12320 makes clear it is also state money."). The State has, in fact, imposed upon itself an ongoing duty to bankroll the CalPERS funds. *Id.* ("if the CalPERS fund is insufficient to pay the benefits owed to state employees, the state is obligated to pay the money to pensioners from other sources"); *see State ex rel. Pension Obligation Bond Com.*,152 Cal. App. 4th at 1405. (noting that the Legislature has imposed upon itself the obligation to fund CalPERS for over 75 years).

The California Legislature enacted a comprehensive statutory scheme comprising eighteen chapters of the California Government Code that are dedicated exclusively to the administration of CalPERS. *See* CAL. GOV'T CODE §§ 20000-21765. State law dictates the composition of CalPERS Board of Administration ("Board"). The Board includes the State Controller, The State Treasurer, the Director of the Department of Personnel Administration, one member of the State Personnel Board, as well as representatives appointed by the Governor and the Speaker of the Assembly and the Senate Committee on Rules. CAL. GOV'T CODE § 20090. State law also mandates which members of the fund may run for election to the remaining six seats of the board. *Id.* For those elections, the candidates' campaign financial statements must be deposited with, and the election results certified by, the Secretary of State. CAL. GOV'T CODE §§ 20096, 20096.5.

The Board's investment activities are authorized and controlled by the California State Constitution. CAL. CONST. art. XVI, § 17. Under certain conditions, the California State Legislature has the ongoing authority to prohibit or otherwise control the type of investments in which the Board may invest. CAL. CONST. art. XVI, § 17(g) (The Legislature may by statute continue to prohibit certain investments by a retirement board where it is in the public interest to do so . . . ."); CAL. GOV'T CODE §§ 20190 (The board has control of investment "[e]xcept as otherwise restricted by the California Constitution and by law."), § 20191 (board may make any investment "authorized by law").

There is more. State control over CalPERS is further seen in the fact that, by law, the CalPERS Board does not have the power to draw funds itself. Instead, the Board must make a demand upon the State Controller who, in turn, draws warrants to appropriate funds from the California State Treasury. *Westly*, 105 Cal. App. 4th at 1115.

CalPERS must also submit to the Legislature and the Governor for review on a multitude of different subjects. For instance, the Board must submit a review of the system's assets to the Legislature on a quarterly basis, including a report on the fund's asset concentration, and rate of return. CAL. GOV'T CODE § 20235. The Board must also file its annual financial statements and investments to both the governor and the Legislature at the close of each fiscal year. CAL. GOV'T

CODE § 20232. The Board is further required to submit an itemized list of performance materials for review as well as a copy of the annual audit. *Id.* A separate section requires the Board to file a separate annual report with the Governor and each house of the Legislature "on all matters under the jurisdiction of the board." CAL. GOV'T CODE § 20237. Other matters must be separately reported. *See* CAL. GOV'T CODE § 20233 (must submit cost of living adjustments to both governor and Legislature no later than December 1 of each year); CAL. GOV'T CODE § 20238 (must file a report to the Legislature and each appointing power and authority on the number of new state retirees).

CalPERS' purpose and legal structure establish that it is an arm of the State which cannot be removed to federal court on diversity grounds.

**3. Courts That Have Considered the Issue Have Concluded that CalPERS Is an Arm of the State**

At least one federal district court has remanded to state court an action brought by CalPERS after determining that CalPERS is an arm of the State of California. In *State of California Public Employees' Retirement System v. Strite Rite Children's Group, Inc.*, Judge Davis in the Southern District of Florida confronted the question of whether CalPERS is an arm of the state in the removal/remand context.[10] There, CalPERS brought an action in Florida state court for breach of a lease agreement. *State of Cal. Pub. Employees' Ret. Sys. v. Strite Rite Children's Group, Inc.*, slip. op. at 2. Defendants removed, asserting the Court had diversity jurisdiction because defendant was a Massachusetts corporation and "Plaintiff [CalPERS] is or should be deemed to be a body corporate, separate and distinct from the state of California" and therefore a citizen for diversity purposes. *Id.* There, CalPERS moved for remand, arguing that CalPERS could not be made to litigate in federal court because the Eleventh Amendment made CalPERS immune from suit in federal court. *Id*.[11]

---

[10] Magid Decl. Ex. B.

[11] CalPERS here does not base its remand motion on the Eleventh Amendment. The analysis of whether CalPERS is an "arm of the state," however, is substantially the same under the rubric of Eleventh Amendment state immunity and the U.S. Supreme Court's jurisprudential rule that an arm of the state is not a citizen for purposes of diversity jurisdiction.

Judge Davis found that federal subject matter jurisdiction turned on "whether CalPERS is properly classified as …an 'arm of the state'" and focused on "three factors in determining whether the subject entity is an arm of the state: 1) how the state law defines the entity; 2) the degree of state control over the entity; and 3) the entity's fiscal autonomy." *Id.* at 3 (citing *Stewart v. Baldwin County Bd. of Educ.*, 908 F.2d 1499, 1509 (11th Cir. 1990)). The court found as a matter of law that CalPERS is defined by California state law to be a unit of the State (*id.*), the State "exercises significant control over CalPERs" (*id.* at 4), and "more importantly," because the State of California is required to contribute money to the CalPERS, the retirement fund is one of the "continuing obligations of the state," and the retirement fund is part of the State Treasury (*id*. at 4-5).

In addition, two decisions from this District have held that CalPERS is immune from suit in federal court under the Eleventh Amendment. In one case, the court concluded that it did not have subject matter jurisdiction to consider a pendent state law claim against the state defendants, including CalPERS and its Board. *Retired Pub. Employees' Ass'n, Chapter 22 v. Cal.*, 614 F. Supp. 571, 581 (N.D. Cal. 1984) ("this Court is without jurisdiction to consider plaintiffs' third claim for relief in the 1977 complaint"). To reach this conclusion, the Court necessarily, though implicitly, concluded that CalPERS was an arm of the state entitled to assert the immunity under the Eleventh Amendment afforded only to states and arms of the state. In another action in this District, the court found that CalPERS has standing to assert immunity under the Eleventh Amendment, but concluded that Congress had abrogated that state immunity under the particular federal law at issue. *Kaplan v. Cal. Pub. Employees' Ret. Sys.*, No. C 98-1246 CRB, 1998 U.S. Dist. LEXIS 14040, **7-9 (N.D. Cal. Sept. 3, 1998) (acknowledging state defendants, including CalPERS, had standing to assert Eleventh Amendment immunity).

Similarly, a California state court has also determined CalPERS to be part of the State. *Westly*, 105 Cal. App. 4th at 1116 (affirming trial court's determination that "CalPERS is a part of the state" and that the CalPERS fund is "state money").

In light of the foregoing, there can be no doubt that CalPERS derives its structure, power, and funding from the State of California and is regulated by the same. CalPERS is thus the "arm

of the state" and is not a citizen of California for diversity jurisdiction purposes.

**C. Other Public Employee Retirement Systems Structured Similarly to CalPERS Are Regularly Determined to Be Arms or Alter-Egos of the State**

The overwhelming majority of cases have found that state retirement systems are arms of the state for either diversity or Eleventh Amendment purposes. *See Fitzpatrick v. Bitzer*, 519 F.2d 559, 565 (2d Cir. 1975) (concluding Connecticut retirement system was the alter ego of the state); *Mello v. Woodhouse,* 755 F. Supp. 923, 926 (D. Nev. 1991) (concluding that where lawsuit was against Nevada retirement system that "the suit is, in effect, a suit against Nevada."); *United States v. S.C.*, 445 F. Supp. 1094, 1100 (D.S.C. 1977).

For instance, the Kansas Public Employees Retirement System ("KPERS") has been held to be the alter ego of the State, where it has characteristics very similar to CalPERS. *Kansas Pub. Employees Ret. Sys. v. Boatmen's First Nat'l Bank*, 982 F. Supp. 806, 808 (D. Kan. 1997) (considering that KPERS must present annual report to governor and other officials, that the KPERS trust fund is maintained in the state treasury, and that limitations have been placed on the investments the fund can make and annual audits.). An earlier court had determined that KPERS was also an "arm of the state" for purposes of the Eleventh Amendment. *Am. Int'l Specialty Lines Ins. Co. v. Reimer & Koger Assocs.*, 874 F. Supp. 324, 326 (D. Kan. 1995).

The Second Circuit concluded that the New York State and Local Employees Retirement System was an "arm of the state" and thus entitled to Eleventh Amendment immunity. *McGinty*, 251 F.3d at 100. A different court had come to the same conclusion years earlier. *21 Props. Inc. v. Romney*, 360 F. Supp. 1322, 1326 (N.D. Tex. 1973) (concluding that in so far as money damages were sought by the plaintiffs, the Retirement System was the alter ego of the State of New York).

A court has also found the Pennsylvania Municipal Retirement System to be the alter ego of the state for both diversity and Eleventh Amendment purposes and that the remand of the case was thus proper. *JMB Group Trust IV v. Pa. Mun. Ret. Sys.*, 986 F. Supp. 534 (N.D. Ill. 1997).

The Sixth Circuit explained in an *en banc* decision that Michigan's state retirement system for state judges was an "arm of the state:"

> As we see it, the retirement system is most naturally characterized as an arm of the State. It is a product of state legislation. It is run by state officials or individuals appointed by state officials. It serves state officials--not just all state-court judges in Michigan but many of the top government officials in the State (e.g., the governor, the lieutenant governor, the secretary of state, the attorney general). It is funded by the state treasury as well as by contributions from state officials. And if the retirement system faces a monetary shortfall, state legislation requires the state treasurer to make up the difference with state funds. For these reasons and those elaborated below, the district court correctly characterized the retirement system as an arm of the State.

*Ernst*, 427 F.3d at 355. This characterization of the Michigan system would apply equally to CalPERS, except that CalPERS reaches far more state employees than the Michigan system at issue in *Ernst*.

**D. The Three Pleadings From Other Litigations Attached to Defendants' Notice of Removal Do Not Create Diversity Jurisdiction Because They Are Unchallenged Fact Allegations, Not Legal Findings of Citizenship for Diversity Purposes**

Whether an entity is an arm of the state is purely a question of law, determined by looking to state laws creating and governing the subject entity. *Regents of the Univ. of Cal.,* 519 U.S. at 428. Defendants point to three cases in which CalPERS has been involved since 1931 wherein a federal court sat in diversity. They base their removal on diversity grounds entirely on these three litigations. These past actions, however, do not make this action removable for several reasons.

First and foremost, in none of the cases was there a judicial determination that CalPERS is not an arm of the state. In fact, none of the cases involved a motion to remand, nor it would appear that at any time the issue of whether CalPERS is an "arm of the state" ever arose. Consequently, the authority relied upon by Defendants fails to even touch on the California law that created and governs CalPERS. Where an enumerated fact allegation in a complaint states either explicitly or implicitly that CalPERS is a "citizen" of California, it is of no consequence to the purely legal question of whether an entity is an arm of the state. A fact allegation, even one asserted by CalPERS itself, is simply incapable of plumbing the central issue of whether CalPERS, as a matter of law, is an arm of the state. Were this not the case, then the fact allegations in the complaint here would be dispositive. *See* Complaint at ¶ 10 (alleging CalPERS

is arm of the State and not a California citizen).

Second, and unlike Eleventh Amendment Immunity, an alter ego of a state may not create or waive diversity jurisdiction. *Fifty Assocs. v. Prudential Ins. Co. of Am.*, 446 F.2d 11867, 1192 (9th Cir. 1970). In fact, even a party's concession to diversity jurisdiction in the same action is not dispositive of the existence of diversity, as it is a question of subject-matter jurisdiction. *United Food & Commercial Workers Union, Local 919 v. Centermark Props. Meriden Square, Inc.*, 30 F.3d 298, 301-02 (2d Cir. 1994). It is the structure of the entity under state law that is paramount to the analysis. Previous assertions by parties or their advocates have no bearing on the ultimate legal conclusion.

Third, the pleadings relied upon by the Defendants do nothing to show that CalPERS is not an arm of the state. For example, in the *Phillips v. Reckitt Bensiker, Inc.* pleading (Ex. B to the Notice of Removal), CalPERS merely asserted that it was "an independent administrative agency existing under the laws of the State of California." *Id.* at Ex. B at 2. This is not inconsistent with being an arm of the state, as the State of California works through a host of independent administrative agencies that would qualify as the State's alter ego. *See e.g., Regents of the Univ. of Cal. v. Indem. Ins. Co. of N. Am.*, No. C 07-2721 PJH, 2007 U.S. Dist. LEXIS 58700 (N.D. Cal. Aug. 3, 2007).[12]

**E. This Is Not a Class Action and Therefore the Class Action Fairness Act Cannot Support Subject Matter Jurisdiction Here**

Fitch alone attempts to effect removal under CAFA.[13] The attempt is baseless. CAFA provides grounds for federal subject matter jurisdiction over (1) class actions filed pursuant to "rule 23 of the [FRCP] or similar State statute . . . authorizing an action to be brought by 1 or more representatives persons as a class action." 28 U.S.C. §§ 1332(d)(1)(B); and (2) "mass

---

[12] As for the other two past litigations which Defendants point toward, in *McCall v. Scott, et al.*, CalPERS was only added as one of twenty-eight named plaintiffs several months after the case was initiated by the Comptroller of the State of New York as Trustee of the New York State Common Retirement Fund. *See* Ex. D to the Notice of Removal. The action against Barbara L. Goldsmith was settled in under a year without any determination as to the propriety of the court's jurisdiction. *See* Ex. C to the Notice of Removal.

[13] The other defendants do not contend that CAFA provides grounds for removal here.

actions" in which the "claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact." 28 U.S.C. §§ 1332(d)(11)(A), (B)(i). The lawsuit here is neither of these things.

CalPERS, as an "arm of the state" of California, brought an individual action to recover investment losses it sustained due to Defendants' negligent misrepresentations and negligent interference with prospective economic advantage. Fitch asserts that, because CalPERS is a state pension fund for millions of state pensioners, a lawsuit by CalPERS is necessarily a "class action." *See* Fitch Notice of Removal at 3-4. According to Fitch's flawed reasoning, for example, any individual suit in a state court brought on wholly state law grounds by a public corporation with more than 100 shareholders would always be removable to federal court under CAFA. This was not the intent of Congress, nor a logical application of the language of CAFA itself.

## IV. CONCLUSION

It was the desire of the first Congress of the United States to keep the sovereign States and their arms and alter egos out of federal courts sitting in diversity. *See Ames*, 111 U.S. at 463-65. To that end, this Court should grant the instant motion, and remand this matter to the Superior Court of California, County of San Francisco, the state court in which it was filed.

Dated: September 4, 2009

**BERMAN DeVALERIO**

By: ______s/______
Joseph J. Tabacco, Jr.

James Magid
425 California Street, Suite 2100
San Francisco, CA 94104
Telephone: (415) 433-3200
Facsimile: (415) 433-6382

*Attorneys for Plaintiff California Public Employees' Retirement System*