1   David T. Biderman (SBN 101577)
Farschad Farzan (SBN 215194)
2   **PERKINS COIE LLP**
3   Four Embarcadero Center, Suite 2400
San Francisco, California  94111
4   Telephone:  (415) 344-7000
Facsimile:  (415) 344-7050
5   Email: DBiderman@perkinscoie.com
Email: FFarzan@perkinscoie.com
6

7   Floyd Abrams (*admitted pro hac vice*)
Dean Ringel (*admitted pro hac vice*)
8   Adam Zurofsky (*admitted pro hac vice*)
**CAHILL GORDON & REINDEL LLP**
9   80 Pine Street
New York, New York 10005
10  Telephone:  (212) 701-3000
Facsimile:  (212) 269-5420
11

12  Attorneys for Defendant The McGraw-Hill Companies, Inc.

13

14

15                      UNITED STATES DISTRICT COURT

16                  NORTHERN DISTRICT OF CALIFORNIA

17

| | |
|---|---|
| CALIFORNIA PUBLIC EMPLOYEES' RETIREMENT SYSTEM, | No. 09-03628-SI |
| Plaintiffs, | **DEFENDANTS' MEMORANDUM OF POINTS & AUTHORITIES IN OPPOSITION TO MOTION TO REMAND** |
| v. | |
| MOODY'S CORP., MOODY'S INVESTORS SERVICE, INC., THE MCGRAW-HILL COMPANIES, INC., FITCH, INC., FITCH GROUP, INC., FITCH RATINGS, LTD. AND DOES 1 THROUGH 100, | Date:  November 13, 2009<br>Time:  9:00 a.m.<br>Place:  Courtroom 10<br>Judge:  Hon. Susan Illston |
| Defendants. | |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

PROCEDURAL HISTORY ............................................................................................... 3

CONSTITUTIONAL AND STATUTORY BACKGROUND ........................................ 3

          A.   CalPERS's Role as Fiduciary for State and Non-State Employees ............... 3

          B.   Proposition 162 ......................................................................................... 5

ARGUMENT ...................................................................................................................... 5

REMOVAL WAS PROPER UNDER 28 U.S.C. § 1441 BECAUSE CALPERS IS NOT
AN ARM OR ALTER EGO OF THE STATE OF CALIFORNIA FOR CITIZENSHIP
PURPOSES .......................................................................................................................... 5

    I.       THE ROLE OF DIVERSITY JURISDICTION ................................................. 5

    II.      APPLICABLE STANDARDS ............................................................................ 6

    III.     CALIFORNIA LAW TREATS CALPERS — AND CALPERS, IN
            FACT, ACTS — AS AN INDEPENDENT FIDUCIARY OF ITS
            MEMBERS, NOT AN ARM OF THE STATE ................................................... 7

          A.   CalPERS Has Asserted Its Own Independent Status As a Citizen
              of California Through Its Repeated Invocations of Diversity
              Jurisdiction. ............................................................................................... 8

          B.   California Law Treats CalPERS As Independent. ..................................... 9

    IV.     ELEVENTH AMENDMENT FACTORS WEIGH IN FAVOR OF
            FINDING CALPERS IS NOT AN ARM OF THE STATE. .............................. 11

          A.   A Money Judgment in CalPERS's Favor Will Not Impact the
              State Treasury. ........................................................................................ 12

           B.   CalPERS Does Not Perform a Central Government Function. .................. 15

          C.   The Other *Mitchell* Factors Weigh Against a Finding That
              CalPERS Is an Arm or "Alter Ego" of the State. ..................................... 18

          D.   Cases Involving Pension Funds and Other Entities Support the
              Conclusion That CalPERS Is Not an Arm of the State of
              California. ................................................................................................ 19

          E.   The Cases Cited by CalPERS Addressing Its Status (Or That of
              Other Public Retirement Systems) Using an Eleventh Amendment
              Analysis Do Not Provide a Basis for Ignoring the *Mitchell*
              Analysis. ................................................................................................. 20

CONCLUSION ................................................................................................................. 23

1

**TABLE OF AUTHORITIES**

Page

2

Cases

3

*Almond* v. *Boyles*, 612 F. Supp. 223 (E.D.N.C. 1985)............................................ 13, 19

*Beentjes* v. *Placer County Air Pollution Control District*, 397 F.3d 775
(9th Cir. 2005)............................................................................ 16

*Befitel* v. *Global Horizons, Inc.*, 461 F. Supp. 2d 1218 (D. Haw. 2006)............... 11-12

*Boatmen's First National Bank* v. *Kansas Public Employees
Retirement System*, 915 F. Supp. 131 (W.D. Mo. 1996)................................ 7, 13-15, 22n

*California ex. rel. Lockyer* v. *Dynegy, Inc.*, 375 F.3d 831 (9th Cir.
2004) ............................................................................................ 12n

*California Public Employees' Retirement System,* v. *The Chubb Corp.*,
127 F. Supp. 2d 572 (D.N.J. 2001) ................................................. 18

*In re Cendant Corp. Securities Litigation*, 109 F. Supp. 2d 235 (D.N.J.
2000) ............................................................................................ 18

*Competitive Technologies* v. *Fujitsu Ltd.*, 286 F. Supp. 2d 1118 (N.D.
Cal. 2003)..................................................................................... 10, 12, 19

*Durning* v. *Citibank, N.A.*, 950 F.2d 1419 (9th Cir. 1991) ....................... 14

*Ernst* v. *Rising*, 427 F.3d 351 (6th Cir. 2005)....................................... 21

*Fifty Assocs.* v. *Prudential Insurance Co. of America*, 446 F.2d 1187
(9th Cir. 1970)............................................................................ 8n

*Fitzpatrick* v. *Bitzer*, 519 F.2d 559 (2d Cir. 1975)................................. 7, 22

*Gardner* v. *Mastec North America, Inc.*, 2005 WL 3244351 (D. Or.
Nov. 27, 2005) ............................................................................ 12n

*Holz* v. *Nenana City Public School District*, 347 F.3d 1176 (9th Cir.
2003) ............................................................................................ 14

*JMB Group Trust IV* v. *Pennsylvania Municipal Retirement System*,
986 F. Supp. 534 (N.D. Ill. 1997) ................................................. 22

*Kansas Public Employees Retirement System* v. *Boatmen's First
National Bank*, 982 F. Supp. 806 (D. Kan. 1997) ......................... 7

*Kaplan* v. *California Public Employees' Retirement System*, 1998 U.S.
Dist. LEXIS 14040 (N.D. Cal. Sept. 3, 1998)............................... 21

*Kitchen* v. *Upshaw*, 286 F.3d 179 (4th Cir. 2002) ............................... 15n

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Page

*Kolb* v. *Paul Revere Life Insurance Co.*, 2002 WL 31947770 (E.D. Ark. Dec. 4, 2002).................................................................. 6n

*Lively* v. *Wild Oats Markets, Inc.*, 456 F.3d 933 (9th Cir. 2006) ........................ 5

*Lynch* v. *San Francisco Housing Authority*, 55 Cal. App. 4th 527 (1997) ........................................................................................... 15n

*In re Lyons*, 118 B.R. 634 (C.D. Ill. 1990) .............................................. 13, 14, 19

*McGinty* v. *New York*, 251 F.3d 84 (2d Cir. 2001) ................................................ 22

*Mello* v. *Woodhouse*, 755 F. Supp. 923 (D. Nev. 1991) ........................................ 22

*Migliori* v. *Boeing North American, Inc.*, 97 F. Supp. 2d 1001 (C.D. Cal. 2000)................................................................................. 9

*Missouri Kansas & Texas Ry.* v. *Hickman*, 183 U.S. 53 (1901).......................... 6-7

*Mitchell* v. *Los Angeles Community College District*, 861 F.2d 198 (9th Cir. 1988).................................................................... 12, 18-19

*People ex. rel. Board of Trustees* v. *Barrett*, 46 N.E.2d 951 (Ill. 1943)............... 19

*Public Employees Retirement System* v. *Boatmen's First National Bank*, 982 F. Supp. 806 (D. Kan. 1997)...................................................... 7

*Retired Public Employees' Association* v. *State of California*, 614 F. Supp. 571 (N.D. Cal. 1984).................................................................. 21n

*Roche* v. *Lincoln Property Co.*, 175 Fed. App'x 597 (4th Cir. 2006) ................. 17, 19

*Ronwin* v. *Shapiro*, 657 F.2d 1071 (9th Cir. 1981)................................................ 11

*State of California Public Employees' Retirement System* v. *Stride Rite*, Civ. No. 96-6558 (slip op.) (S.D. Fla. Dec. 3, 1996) .................... 2, 20

*The Travelers Insurance Co.* v. *Teacher Retirement System of Texas*, 1993 WL 34757 (N.D. Ill. Feb. 5, 1993)............................................... 7, 14, 19

*21 Properties, Inc.* v. *Romney*, 360 F. Supp. 1322 (N.D. Tex. 1973).................. 22

*United States* v. *Clark*, 933 F.2d 1016 (Table), 1991 WL 80579 (9th Cir. 1991) ...................................................................................... 6n

*United States* v. *South Carolina*, 445 F. Supp. 1094 (D.S.C. 1977).................... 22

*Valdes* v. *Cory*, 139 Cal. App. 3d 773 (1983)......................................................... 3, 13n

*Westly* v. *California Public Employees' Retirement System Board of Administration*, 105 Cal. App. 4th 1095 (2003) .................................. 13n

ii

|  | Page |
|---|---|
| **Constitutional Provisions** | |
| U.S. Const. amend. XI ........................................................................... | 7, 11-12, 19-21, 21n |
| Cal. Const. art. 16, §17............................................................................ | 2, 9-11, 13n, 18 |
| **Statutes** | |
| Cal. Gov't Code | |
| § 20001 (Thomson Reuters 2003)........................................................ | 15 |
| § 20090 (Thomson Reuters 2003)........................................................ | 4 |
| § 20173 (Thomson Reuters 2003)........................................................ | 15, 18 |
| § 20176 (Thomson Reuters 2003)........................................................ | 12, 17 |
| § 20177 (Thomson Reuters 2003)........................................................ | 17 |
| § 20193 (Thomson Reuters 2003)........................................................ | 11-12 |
| § 20799 (Thomson Reuters 2003)........................................................ | 4 |
| § 20814(a) (Thomson Reuters 2003) .................................................... | 4 |
| Cal. Pension Protection Act of 1992, Prop. 162 (1992).............................. | *passim* |
| § 2(c) .................................................................................................. | 5 |
| § 2(f)................................................................................................... | 16 |
| §§ 3(b)-(g) .......................................................................................... | 17 |
| § 3(e) .................................................................................................. | 5 |
| § 3(g) .................................................................................................. | 5, 9 |
| 1967 Cal. Stat. Ch. 84 .......................................................................... | 3 |
| 1967 Cal. Stat. Ch. 1631 ...................................................................... | 3 |
| Judicial Code | |
| 28 U.S.C. § 1331 (2006) ...................................................................... | 16n |
| 28 U.S.C. § 1332 (2006) ...................................................................... | 1, 8 |
| 28 U.S.C. § 1441 (2006) ...................................................................... | 5 |
| Va. Code Ann. | |
| § 53.1-95.2 (Thomson Reuters 2009) .................................................. | 15n |
| **Other Authorities** | |
| *Analysis of November 1992 Ballot Propositions* (California Senate Office of Research Aug. 1992) ........................................................ | 16-17 |

DEFENDANTS' OPPOSITION TO MOTION TO REMAND
No. 09-03628-SI

1      Defendants Moody's Corp., Moody's Investors Service, Inc. (together, "Moody's") and

2    The McGraw-Hill Companies, Inc. ("McGraw-Hill"), respectfully submit the following

3    Memorandum of Law in Opposition to the Motion to Remand filed by Plaintiff California Public

4    Employees' Retirement System ("CalPERS"). This Memorandum is directed solely to

5    CalPERS's challenge to removal on the ground of diversity jurisdiction, a ground asserted by all

6    defendants. The Fitch defendants (Fitch, Inc., Fitch Group, Inc. and Fitch Ratings, Ltd., together,

7    "Fitch") are filing a separate memorandum joining the argument set forth herein and addressing

8    the additional basis for removal that Fitch has asserted. (Moody's, McGraw-Hill and Fitch are

9    referred to as "Defendants.")

10    **INTRODUCTION**

11       This Court has subject matter jurisdiction because this action satisfies the jurisdictional

12    requisites for diversity jurisdiction under 28 U.S.C. § 1332.

13       CalPERS does not dispute that the statutory amount in controversy requirement is

14    satisfied. CalPERS similarly does not dispute that the Defendants are not citizens of California.

15    Nor does CalPERS dispute that its principal place of business is in California. The only question

16    for this Court then is whether, as CalPERS now contends, it is an "arm or alter ego of the State,"

17    and therefore not a citizen of the State of California. *See* Plaintiff's Motion to Remand for Lack

18    of Subject Matter Jurisdiction ("Remand Br.") at 1.

19       CalPERS has itself repeatedly and accurately answered this question "No" in the past,

20    asserting that it *is* a citizen of the state of California in sworn pleadings in other federal courts in

21    order to invoke the very diversity jurisdiction it now tries to avoid. *See* Point III.A below. No

22    matter the mode of analysis used, CalPERS's treatment under California law — which CalPERS

23    contends is dispositive of the issue of its citizenship — demonstrates that CalPERS is not an alter

24    ego of the State.

25       This is plain when one focuses on the import of "Proposition 162," which amended the

26    California State Constitution in 1992. The Proposition makes clear that CalPERS cannot be an

27    alter ego of the State because as a matter of law it is an independent fiduciary whose paramount

28    duty is to its members, *not* to the State.

1    Proposition 162 was adopted to ensure that the independence of CalPERS, as fiduciary for

2    the retirement funds of millions of public employees — whether employees of the State of

3    California, municipalities, or locally-constituted school boards — would not be impinged upon by

4    the State.  Proposition 162 specifically prohibits the State of California from directing CalPERS's

5    actions or invading its assets for general State purposes.  As a result of Proposition 162,

6    CalPERS's fiduciary obligations to its members expressly *take precedence over any other duty*,"

7    including any owed to the State of California.  Cal. Const. art. 16, §17(b).  Pursuant to

8    Proposition 162, CalPERS is obliged to serve the interests of its members even when those

9    interests conflict with those of the State of California.  This is directly at odds with the "alter ego

10   of the State" label CalPERS now seeks to apply to itself.

11   Yet despite the centrality of Proposition 162 to CalPERS's independent status, which

12   CalPERS trumpets on its website and in public statements, Proposition 162 is not addressed

13   anywhere in CalPERS's brief.  Nor was it addressed or even briefed in the unpublished decision

14   upon which CalPERS relies to support its assertion that it is an "alter ego" of the State. *See State*

15   *of California Public Employees' Retirement System* v. *Stride Rite*, Civ. No. 96-6558 (slip op.)

16   (S.D. Fla. Dec. 3, 1996).  Nor do any of the other cases cited by CalPERS address the impact that

17   a constitutional amendment imposing a fiduciary duty on an entity that "takes precedence over

18   any other duty" has upon the question of whether the entity is an "alter ego" of the state.

19   That CalPERS cannot be classified as an "alter ego" of the State is also clear under the

20   multifactor test applied by the Ninth Circuit to assess issues under the Eleventh Amendment, an

21   analysis sometimes applied to diversity issues as well.  CalPERS clearly can sue and be sued in

22   its own name.  California's state treasury will not be impacted by any judgment in CalPERS's

23   favor in this case, and CalPERS does not suggest otherwise.  Fewer than one-third of CalPERS's

24   members are state employees.  And not only does the State of California *not* exercise centralized

25   control over CalPERS, it is prohibited from doing so as a result of the passage of Proposition 162.

26   CalPERS cannot have it both ways:  it cannot be both an alter ego of the State whose

27   interests are congruent with those of its "other self," the State of California, and an independent

28   fiduciary charged under law with putting the interests of its members above all others, including

2

those of the State.  CalPERS's repeated prior assertions in other federal courts of diversity

jurisdiction premised on the proposition that it is a citizen of California are consistent with the

undisputed facts.  As those facts and the law make clear, CalPERS is not an arm or "alter ego" of

the State of California.  Removal to this Court on the ground of diversity citizenship was proper.

## PROCEDURAL HISTORY

CalPERS filed suit against the Defendants on July 9, 2009 in the Superior Court of

California, County of San Francisco; the complaint was thereafter served on each Defendant.  The

complaint asserts claims under California statutory and common law for losses CalPERS

allegedly incurred following its investment in three Structured Investment Vehicles ("SIVs").  *See*

Compl. ¶¶ 1, 118-38.  On August 7, 2009, all defendants filed a Notice of Removal, timely

removing the action on the basis of this Court's diversity jurisdiction.  On September 4, 2009,

CalPERS filed the instant motion to remand the action to state court, asserting that this Court

lacks diversity jurisdiction because CalPERS is an "arm or alter ego of the State" of California

and thus is not a citizen of California for diversity purposes.

## CONSTITUTIONAL AND STATUTORY BACKGROUND

### A.    CalPERS's Role as Fiduciary for State and Non-State Employees

The California state retirement system initially oversaw retirement benefits only for state

employees.  Gradually, however, the scope of its membership grew to cover all public employees,

including municipal and local school board employees.  In 1967, in recognition of the expanded

coverage provided by the retirement system, the State Legislature changed the system's name to

the Public Employee Retirement System ("PERS") (Chapters 84 and 1631, Statutes of 1967).  *See*

*Valdes* v. *Cory*, 139 Cal. App. 3d 773, 781 n.4 (1983).

As of June 30, 2009, state employees accounted for only 31% of CalPERS's members.

*See* Declaration of David T. Biderman ("Biderman Decl."), Ex. A ("Facts at a Glance: Retirement

& Membership") at 1 (October 2009).[1]  The remainder of CalPERS's membership is comprised

of 38% school employees and 31% local public agency employees.  CalPERS's Board of

---

[1] The facts relied on in this Memorandum are drawn from CalPERS's own public
statements.

DEFENDANTS' OPPOSITION TO MOTION TO REMAND
No. 09-03628-SI

1    Administration ("the Board") is currently comprised of thirteen members.  Six are elected from

2    various categories of CalPERS membership; two — at least one of which may not be a state

3    official — are appointed by the Governor; and a public representative is appointed by the

4    legislature.  Four state officials are *ex-officio* members.  *See* Cal. Gov't Code § 20090.

5           CalPERS is tasked with the management of funds not only for state employees' retirement

6    funds, but for other entities that contract with CalPERS to provide benefits.  Currently, there are

7    over 3,000 non-State agencies or school districts whose pension plans are administered by

8    CalPERS.  *See* Biderman Decl., Ex. A ("Facts at a Glance: Retirement & Membership") at 2

9    (nearly 1,500 school districts participate in CalPERS).  A Board-appointed actuary sets the

10   amount of employer contributions, whether the employer is the State or other contracting public

11   agency.  *See* Cal. Gov't Code § 20814(a).  All employers contribute to CalPERS on a quarterly

12   basis.  The State's contributions are not segregated.  Nor are they simply passed on to State-

13   employee members.  Instead, they are pooled with contributions from other employers, which are

14   then invested by CalPERS.  CalPERS uses the combined funds, together with income from its

15   investment funds, to make benefit payments to its members pursuant to defined formulas, as well

16   as to pay its administrative costs.  *See, e.g.*, Cal. Gov't Code §§ 20799, 20173.

17          Today, CalPERS is the largest pension fund in the United States.  *See* Complaint ¶¶ 4, 82;

18   Biderman Decl., Ex. B (October 14, 2009 Press Release) ("CalPERS is the nation's largest public

19   pension fund with approximately $200 billion in market assets.").  It has been characterized as

20   "one of America's most powerful shareholder bodies" and "the world's most important public

21   pension fund,"[2] and touts its investor activism on its website.  *See* Biderman Decl., Ex. E

22   (CalPERS Corporate Governance, found at http://www.calpers governance.org/focuslist/home,

23   "The 'CalPERS Effect' on Targeted Company Share Prices").  These are positions CalPERS

24   takes in its own right, for the benefit of its members, not on behalf of or for the benefit of the

25   State of California.

26

27

28          [2] *See* Biderman Decl. Exs. C ("Calpers Calls for Heads to Roll at Citigroup," *The Guardian* (Apr. 14, 2004)) & D ("A Time to Reflect," *East Bay Express* (Jan. 7, 2009)).

4

1

## B.    Proposition 162

2        Central to any consideration of CalPERS's status under state law is Proposition 162, a

3   voter-enacted amendment to the California Constitution entirely ignored by CalPERS in its

4   analysis.

5        In 1991, to help balance the state budget both the Governor and Legislature sought to

6   use funds that had been designated for use by CalPERS.  Legislation was passed that

7   transferred the power to appoint the actuary, who determines contribution amounts, to the

8   Governor.  *Id.*  In response to the State's efforts to assert control over CalPERS and its

9   funds, in November 1992 beneficiaries of the fund and other interested parties placed

10  Proposition 162 on the ballot.  *See* Biderman Decl., Ex. F (Teachers' Retirement Board

11  Regular Meeting Agenda (June 3, 2004)) at 2 (describing the mobilization of CalPERS and

12  its constituents to place Proposition 162 on the ballot).  The stated intention of Proposition

13  162 was to protect CalPERS from "raids" by the Legislature and Governor.  *See* California

14  Pension Protection Act of 1992, § 2(c).  Proposition 162 was passed by the people of

15  California, and amended the Constitution "[t]o affirm the legal principle that a retirement

16  board's duty to its participants and their beneficiaries takes precedence over any other duty"

17  and "[t]o give the sole and exclusive power over the management and investment of public

18  pension funds to the retirement boards elected or appointed for that purpose, to strictly limit

19  the Legislature's power over such funds, and to prohibit the Governor or any executive or

20  legislative body of any political subdivision of this state from tampering with public pension

21  funds."  *See id.* §§ 3(g), 3(e).

22                                    **ARGUMENT**

23  **REMOVAL WAS PROPER UNDER 28 U.S.C. § 1441 BECAUSE CALPERS IS NOT AN
    ARM OR ALTER EGO OF THE STATE OF CALIFORNIA FOR CITIZENSHIP**

24                                   **PURPOSES**

25  **I.    THE ROLE OF DIVERSITY JURISDICTION**

26        The purpose of diversity jurisdiction is to protect an out-of-state defendant from any

27  potential bias that might exist against it in state court in favor of local litigants.  *See Lively* v. *Wild*

28  *Oats Markets, Inc.*, 456 F.3d 933, 940 (9th Cir. 2006).  Precisely that purpose is served by

1   removal here. The Defendants seek a federal forum in which to litigate a suit that has been

2   brought against them by a retirement system for public employees in the State of California.

3   CalPERS is a sophisticated manager of retirement funds that vigorously seeks to protect the

4   interests of its members through, among other means, investor activism and advocacy. Although

5   any judgment in this action does not inure to the benefit of the State, it would benefit CalPERS's

6   members. Because CalPERS is a citizen of California — and a peculiarly powerful citizen

7   susceptible to potential favor in a local forum at that — the policies giving rise to diversity

8   jurisdiction are plainly served by removal.

9   **II.    APPLICABLE STANDARDS**

10          CalPERS correctly acknowledges that its legal status as a citizen of the State of California

11  is "a question of law" (Remand Br. at 2). But like any legal question, it is one driven by the facts.

12  The facts relied upon by the Defendants are taken from publicly available information and cannot

13  reasonably be disputed.[3] Those facts lead to only one conclusion: CalPERS is not an "alter ego"

14  or arm of the State of California.[4]

15          Where, as here, a state is not a named party to a litigation, but a facially diverse party

16  nonetheless asserts that jurisdiction is not proper because it is an "arm" or "alter ego" of the state

17  itself, the purpose of a Court's inquiry is to determine whether the state is in fact the real party in

18  interest. *Missouri, Kansas & Texas Ry* v. *Hickman*, 183 U.S. 53, 59 (1901). A state is the real

19  party in interest "when the relief sought is that which inures to [the state] alone, and in its favor

20  the judgment or decree, if for the plaintiff, will effectively operate." *Id.* This is not such a case:

21  the relief sought by CalPERS will not inure solely (or even substantially) to the benefit of the

22

23          [3] As a result, the concept of burden is largely irrelevant for purposes of resolving the
    instant dispute. *See United States* v. *Clark*, 933 F.2d 1016 (Table) (9th Cir. 1991) ("Where no
24  facts are in dispute, who . . . bore the burden of proof is simply irrelevant."); *Kolb* v. *Paul Revere
    Life Insurance Co.*, Civ. No. 4:01cv00184, 2002 WL 31947770, at *4 & n.5 (E.D. Ark. Dec. 4,
25  2002) ("[B]ecause the matter before the Court is a question of law, the issue of burden of proof is
    irrelevant. . . . When the matter before the Court is a question of law, the parties have an equal
26  opportunity to convince the Court of the soundness of their legal reasoning.").
           [4] To the extent that, on reply, CalPERS disputes any of the facts relied upon by
27  Defendants — which are all drawn from publicly available information — Defendants
    respectfully request permission to pursue any limited jurisdictional discovery that might be
28  necessary to resolve such factual disputes.

DEFENDANTS' OPPOSITION TO MOTION TO REMAND
No. 09-03628-SI

1   State of California, and any judgment in favor of CalPERS will not operate for the State of

2   California's benefit (or for the benefit of its citizens generally as opposed to CalPERS members).

3   *See infra* pp. 12-15.

4          There is no one mode of analysis that courts have adopted to assess whether a state-

5   created entity is an "arm" or "alter ego" of the State for diversity purposes.  Some courts have

6   relied on an analysis under the Eleventh Amendment; others have carved out a separate test.

7   Some state pension funds have been found to be arms of the state, *see, e.g., Fitzpatrick* v. *Bitzer*,

8   519 F.2d 559, 565 (2d Cir. 1975), and others not, *see, e.g., The Travelers Insurance Co.* v.

9   *Teacher Retirement System of Texas*, No. 92cv6651, 1993 WL 34757, at *3 (N.D. Ill. Feb. 5,

10  1993).  Indeed, the diversity question has been resolved with diametrically opposite results for the

11  same pension fund by two different courts.  *Compare Kansas Public Employees Retirement*

12  *System* v. *Boatmen's First National Bank*, 982 F. Supp. 806, 808-09 (D. Kan. 1997) (finding the

13  Kansas Public Employees Retirement System ("KPERS") is an arm of the state) (cited by

14  CalPERS at page 11 of its Remand Br.) *with Boatmen's First National Bank* v. *Kansas Public*

15  *Employees' Retirement System*, 915 F. Supp. 131, 137-40 (W.D. Mo. 1996) (finding KPERS is

16  not an arm of the state) (not cited in CalPERS's brief).

17         At the end of the day, the Court must answer the question posed by the Supreme Court in

18  *Hickman*: is the State the real party in interest?  This requires analysis of the unique character of

19  CalPERS, shaped by, among other things, the Constitutional commands of Proposition 162.

20  Under any applicable test, the result is the same:  CalPERS is a citizen of the State of California

21  asserting a claim on its own behalf and subject to diversity jurisdiction.

22  **III.    CALIFORNIA LAW TREATS CALPERS — AND CALPERS, IN FACT,
            ACTS — AS AN INDEPENDENT FIDUCIARY OF ITS MEMBERS, NOT**

23          **AN ARM OF THE STATE**

24         CalPERS suggests that the answer to the question before this Court — is CalPERS an arm

25  or "alter ego" of the State of California? — must be "Yes" because CalPERS "was created by,

26  and is governed according to, the California State Constitution and California Government

27  Code."  (Remand Br. at 2)  Not so.  To state that an entity is created by the state is only the

28  starting point.  The "arm or alter ego of the state" analysis presumes that there is sufficient state

7

DEFENDANTS' OPPOSITION TO MOTION TO REMAND
No. 09-03628-SI

1   connection to make the inquiry necessary in the first place.  To actually *answer* the question one

2   must move well beyond the mere statutory origin of CalPERS and look at the Constitutional and

3   statutory framework within which CalPERS exists and carries out its duties.

**A.     CalPERS Has Asserted Its Own Independent Status As a Citizen of
California Through Its Repeated Invocations of Diversity Jurisdiction.**

6          On at least four occasions, CalPERS has asserted in a sworn pleading that it is a citizen of

7   the State of California, and invoked or acceded to the jurisdiction of the federal courts.  *See, e.g.,*

8   *Phillips* v. *Reckitt Bensicker, Inc.*, (M.D. Pa No. 1CV-03-2120), Third Party Complaint of

9   Defendants California Public Employees Retirement System et al. (March 1, 2004) at ¶ 2

10  ("CalPERS is an independent administrative agency existing under the laws of the State of

11  California with its principal place of business at Sacramento, California.") & ¶ 6 ("Federal

12  jurisdiction in this matter is based on diversity of citizenship pursuant to 28 U.S.C. section

13  1332.") (Biderman Decl., Ex. G; Notice of Removal, Ex. B); *see also State of California Public*

14  *Employees' Retirement System* v. *Goldsmith*, No. 1:04-3374 (N.D. Ga.) (November 17, 2004) at

15  ¶ 2 ("This Court has original jurisdiction of Plaintiff's claims against the Defendant pursuant to

16  28 U.S.C. §1332(a)(1) *because the parties are citizens of different states*") (emphasis added)

17  (Biderman Decl., Ex. H; Notice of Removal, Ex. C); *McCall* v. *Scott*, No. 3 97 0838 (M.D.

18  Tenn.), Complaint of CalPERS (Nov. 24, 1997) at ¶ 6 (invoking diversity jurisdiction of federal

19  court and alleging that the parties are "citizens of different states") (Biderman Decl., Ex. I; Notice

20  of Removal, Ex. D); *Target Corp.* v. *CalPERS*, 02-cv-3776 (D.N.J.), Complaint (Aug. 2, 2002) at

21  ¶ 7 (Biderman Decl., Ex. J) & Answer of CalPERS (Oct. 7, 2002) at ¶ 7 (admitting that "[t]here is

22  complete diversity of citizenship between the parties to this action") (Biderman Decl., Ex. K).[5]

23

24

25        [5] CalPERS relies upon *Fifty Assocs.* v. *Prudential Insurance Co. of America*, 446 F.2d
    1187 (9th Cir. 1970), for the proposition that an "alter ego of a state may not create or waive
26  diversity jurisdiction."  *See* Remand Br. at 13.  That is true enough.  But as the quoted statement
    from CalPERS's brief itself reflects, this assumes the answer to the question that CalPERS asks
27  this Court to decide — *i.e.*, *whether* CalPERS *is*, in fact, an arm or "alter ego" of the State.
    CalPERS's prior invocations of diversity reflect its own understanding that its unique structure
28  makes it independent (and not an alter ego) of the State of California.

DEFENDANTS' OPPOSITION TO MOTION TO REMAND
No. 09-03628-SI

1    These statements reflect CalPERS's own understanding that it is not an arm or "alter ego"

2    of the State, but rather a citizen of California, a view that is entirely consistent with the actions it

3    routinely takes as an "independent" administrative agency, a label it applied to itself in such

4    pleadings.  Although the Court of course must undertake its own assessment of whether it has

5    jurisdiction over this matter, CalPERS's consistent, and repeated, prior admissions provide one

6    compelling source of evidence of whether it is, as it now contends, an "arm or alter ego of the

7    State," or whether it is, as it has contended until now, a citizen of the State of California.  *Cf.*

8    *Migliori* v. *Boeing North American, Inc.*, 97 F. Supp. 2d 1001, 1009 n.9 (C.D. Cal. 2000)

9    (although not binding judicial admissions, "the pleadings from a prior litigation can be used as

10   evidence").  Such self-recognition reinforces the analysis reflected in the cases discussed below:

11   CalPERS's independence and the paramount duties that it owes to its members as opposed to the

12   State of California render it an independent entity, the very antithesis of the "alter ego" which

13   alone is entitled to immunity from the salutary principles that permit removal by non-resident

14   defendants when they are sued by a citizen of the forum state.

**B.     California Law Treats CalPERS As Independent.**

16   In its motion for remand, CalPERS suggests that the question of CalPERS's citizenship is

17   one that can be resolved simply by "looking at how the entity is structured under state law."

18   (Remand Br. at 6, n.9)  That inquiry necessarily requires consideration of Proposition 162 and its

19   impact on CalPERS's obligations and activities (a review that CalPERS assiduously avoids).

20   Any such review requires a finding that the very laws that define CalPERS's obligations and

21   powers are wholly inconsistent with the "alter ego" treatment CalPERS now seeks.

22   Under Proposition 162, CalPERS owes a fiduciary duty to its members that takes

23   precedence over any obligation it has to the State of California.  *See* Cal. Const. art. 16, § 17(b)

24   ("A retirement board's duty to its participants and their beneficiaries shall take precedence over

25   any other duty.")  Reinforcing this duty and expressly barring the State from interfering in

26   CalPERS's performance of its duties was one of the purposes of Proposition 162.  *See* The

27   California Pension Protection Act of 1992, § 3(g) (reciting "Purpose and Intent") ("To affirm the

28

9

1    legal principle that a retirement board's duty to its participants and their beneficiaries takes

2    precedence over any other duty.").

3         CalPERS's investment policies reflect these basic legal principles and Proposition 162's

4    explicit mandate.  They specify that CalPERS's duties to its members are its primary

5    consideration when making investment decisions.  *See* Biderman Decl., Ex. L (CalPERS

6    Statement of Investment Policy, Regarding Divestment, at 2 (Feb. 17, 2009) ("These fiduciary

7    obligations generally forbid CalPERS from sacrificing investment performance for the purpose of

8    achieving goals that do not directly relate to CalPERS operations or benefits.")).  And when

9    CalPERS perceives a conflict between its duties to its members and the policies of the State, it

10   will act in the interest of its members, not the State.  *Id.*  As a result, CalPERS has made clear that

11   its position on proposed legislation, for example, will be shaped by its duties as a fiduciary to its

12   members, without regard for the policies of the government or broader public interest.  *See*

13   Biderman Decl., Ex. M ("CalPERS 2007-08 Federal Legislative and Regulatory Investment

14   Policy Guidelines" (Nov. 13, 2007)) (listing among its "Overarching Principles" "to preserve and

15   enhance the independent fiduciary authority of institutional investors," which includes

16   "oppos[ing] policies that restrict or direct investment options and decision-making such as any

17   federally mandated investment restrictions or requirements").  Thus, CalPERS has opposed

18   proposed divestment laws when it viewed the constraints imposed by those laws as conflicting

19   with its fiduciary duties.  *See* Biderman Decl., Ex. N (CalPERS Press Release, "CalPERS

20   Opposes Iran Divestment Legislation" (May 14, 2007)) ("[CalPERS] today voted to oppose State

21   legislation that would limit the decision-making authority of the pension fund's Board by

22   prohibiting investments in Iran. . . . 'We are gravely concerned about terrorist activities

23   throughout the world.  But we hold pension dollars in trust, and it is our obligation to invest those

24   dollars for the exclusive purpose of paying benefits for our members'").

25        Moreover, a true arm or "alter ego" of the state holds property merely as a trustee for the

26   state's use.  *Competitive Technologies* v. *Fujitsu Ltd.*, 286 F. Supp. 2d 1118, 1132 (N.D. Cal.

27   2005) (Spero, M.J.).  Here, it is undisputed that CalPERS funds are restricted for use by CalPERS

28   and cannot be touched by the State of California.  *See* California Constitution art. 16, § 17(a)

1    ("The assets of a public pension or retirement system are trust funds and shall be held for the

2    exclusive purposes of providing benefits to participants in the pension or retirement system and

3    their beneficiaries . . ."); Cal Gov't Code § 20193 ("Title to real property acquired by or on behalf

4    of the board pursuant to this section . . . shall be vested in the board."). Nor can CalPERS take

5    property on behalf of the State. *Id.* ("This section shall not be construed as authorization to

6    acquire any real property or improvements thereon or to issue any obligation to finance the

7    acquisition on behalf of the state unless that acquisition is authorized by a separate act or

8    appropriation enacted by the Legislature.").

9         In short, the legal framework governing CalPERS *does* shed light on its citizenship.  That

10   framework, however, only underscores CalPERS's independence.  The paramount fiduciary

11   duties imposed by that framework are wholly inconsistent with the "alter ego" status CalPERS

12   now seeks.  If a conflict exists between the interests it serves and those of the State, CalPERS

13   must serve the distinct interests of its members, not those of its purported "other self."  Under

14   such circumstances, it simply cannot be viewed as the "alter ego" or "other self" of the State.

15   **IV.    ELEVENTH AMENDMENT FACTORS WEIGH IN FAVOR OF FINDING
             CALPERS IS NOT AN ARM OF THE STATE.**
16

17        Application of traditional Eleventh Amendment principles, an analysis some courts have

18   used to assess the citizenship of state-created entities (and to which CalPERS refers in its

19   motion), leads to the same conclusion.  Although the Ninth Circuit has not directly ruled on the

20   question of whether the arm or "alter ego" of the state inquiry should be the same for both

21   diversity jurisdiction and Eleventh Amendment immunity analyses, it has recognized that "'a

22   similar rule controls the determination of diversity jurisdiction when individual state officers or

23   agencies are named in lieu of the state' as the Eleventh Amendment analysis." *Befitel* v. *Global

24   Horizons, Inc.*, 461 F. Supp. 2d 1218, 1221 (D. Hawaii 2006) (quoting *Ronwin v. Shapiro*, 657

25   F.2d 1071, 1073 (9th Cir. 1981)).[6]  And district courts within the Ninth Circuit have applied the

26

27        [6]  The Ninth Circuit has also made clear — albeit in the context of examining removal
     pursuant to 28 U.S. § 1331 — that "a state that voluntarily brings suit as a plaintiff in state court
28   cannot invoke the Eleventh Amendment when the defendant seeks removal to a federal court of

11

DEFENDANTS' OPPOSITION TO MOTION TO REMAND
No. 09-03628-SI

1    Eleventh Amendment analysis for diversity purposes. *Befitel*, 461 F. Supp. 2d at 1221-23;

2    *Competitive Tech.*, 286 F. Supp. 2d at 1141 (applying Eleventh Amendment analysis to determine

3    if entity was an arm of the state for diversity jurisdiction).[7]

4         The Ninth Circuit examines five factors to determine whether an entity is an arm of the

5    state for the purposes of sovereign immunity:  "[1] whether a money judgment would be satisfied

6    out of state funds, [2] whether the entity performs central governmental functions, [3] whether the

7    entity may sue or be sued, [4] whether the entity has the power to take property in its own name

8    or only the name of the state, and [5] the corporate status of the entity."  *Mitchell* v. *Los Angeles*

9    *Community College Dist.*, 861 F.2d 198, 201 (9th Cir. 1988).  Assuming this analysis is

10   appropriate where, as here, the question is whether a plaintiff entity is an arm of the state for

11   purposes of diversity jurisdiction, application of this "*Mitchell* test" to the facts of this case

12   demonstrate that CalPERS is not an arm of the state.

13       **A.    A Money Judgment in CalPERS's Favor Will Not Impact the State Treasury.**

14        The relief sought in this suit will not impact the California Treasury.  As the Constitution,

15   statutory scheme, and CalPERS's own statements make clear, CalPERS funds are restricted for

16   use by CalPERS for the system's beneficiaries.  *See* Cal. Const. art. 16, § 17(a) ("The assets of a

17   public pension or retirement system are trust funds and shall be held for the exclusive purposes of

18   providing benefits to participants in the pension or retirement system and their beneficiaries and

19   defraying reasonable expenses of administering the system"); Cal. Gov't Code § 20176

20   ("Notwithstanding any other provision of law, no funds in the retirement fund shall be expended

21   ────────────────────────────────────────────

22   competent jurisdiction." *California ex. rel. Lockyer* v. *Dynegy, Inc.*, 375 F.3d 831, 848 (9th Cir.
     2004); *see also* Remand Br. at n.11.

23       [7] To the extent courts have not explicitly employed the Eleventh Amendment analysis in
     their consideration for diversity purposes, the factors considered are often similar. *See Gardner*

24   v. *Mastec North America, Inc.*, Civ. No. 05-6217, 2005 WL 3244351, at *2 (D. Or. Nov. 27,
     2005) ("[T]hat in order to determine whether an agency is an arm of the state, the court must

25   consider (1) whether state law requires that the action be brought in the name of the state; (2)
     whether the action will affect the state treasury; (3) whether the state agency is performing a

26   governmental or proprietary function; (4) whether the agency is separately incorporated; (5) the
     degree of autonomy of the agency; (6) whether the agency has the power to sue and be sued; (7)

27   whether the agency is immune from state taxation; and (8) whether the state has immunized itself
     from responsibility for the agency's acts."). As discussed in connection with the Eleventh

28   Amendment analysis, these factors support rejection of CalPERS's claim that it is an arm of the
     State or its alter ego.

DEFENDANTS' OPPOSITION TO MOTION TO REMAND
No. 09-03628-SI

for any purpose other than the cost of administration of this system, investments for the benefit of this system, the reduction of employer contributions, and the provision of benefits to the members and retired members of this system and their survivors and beneficiaries."); Biderman Decl., Ex. O (Petition for Writ of Mandate filed by Board of Administration of CalPERS against Governor Schwarzenegger et al. (Aug. 19, 2009) ¶ 34 ("*[T]he state is precluded by law from borrowing from the CalPERS's trust fund.*") (emphasis in original)).

Nowhere in its Motion to Remand does CalPERS suggest that a recovery in this action will benefit the State of California in any way.[8]  The mere fact that the State of California in its capacity as an employer contributes to CalPERS does not establish the connection between this action and the State treasury required for purposes of an Eleventh Amendment analysis.[9]  Presented with similar facts, other courts have held that state retirement systems are not an arm of the state. *See Boatmen's*, 915 F. Supp. at 137-38; *Almond* v. *Boyles*, 612 F. Supp. 223, 228 (E.D.N.C. 1985) ("First, a substantial portion of the money held by the Retirement System was not appropriated by the General Assembly.  Contributors to the Retirement System include state employees, non-state employers, the employees of these non-state entities, and investment income."), *aff'd in relevant part*, 792 F.2d 451, 456 (4th Cir. 1986); *In re Lyons*, 118 B.R. 634, 638 (C.D. Ill. 1990) ("SERS is funded by contributions from employees and the state . . . These

---

[8]  This is unsurprising in light of the fact that, even if CalPERS were to obtain any monetary relief from this suit, such relief would inure to the benefit of CalPERS alone, and would not benefit the State treasury. *See Valdes*, 139 Cal. App. 3d at 788 ("[N]one of the funds within PERS including those in the reserve against deficiencies, may be appropriated for a general public purpose unrelated to the benefit of PERS members because funds received into the treasury for special trust purposes are 'in their nature a continued appropriation for a specific purpose.'").

[9]  Although CalPERS cites to *Westly* v. *California Public Employees' Retirement System Board of Administration*, 105 Cal. App. 4th 1095 (2003) to imply that there is some connection between CalPERS and the State treasury (*see* Remand Br. at 8, 10), as *Westly* recognized, the State's obligation to its own employees arises from its contractual relationship as an employer, rather than from any duty the State may have as the sovereign. *Westly*, 105 Cal. App. 4th at 1116. To the extent that any part of CalPERS's funds may be characterized as "state money" (albeit, as *Westly* noted, *not* part of the State Treasury), their use remains restricted for the benefit of CalPERS members generally and their beneficiaries. *See* Cal. Const. art. 16, § 17.  Courts considering the status of public retirement systems have held that where funds are earmarked for specific use, and cannot be used by the State, that fact will weigh against a finding that the retirement system is an arm or "alter ego" of the State. *See Almond*, 612 F. Supp. at 228 ("[S]tate funds appropriated to the Retirement System lose their identity as 'general revenue funds' and become earmarked for a particular purpose").

13

1    funds are pooled together and kept in a separate account within the state treasury.  SERS argues

2    that this 'commingling' of state and employee funds tilts [this] factor[] in its favor.  We must

3    disagree.  The mere fact that an agency derives some of its income from the state does not mean

4    that it is entitled to partake of the state's immunity.") (citations omitted), *aff'd* 957 F.2d 444 (7th

5    Cir. 1992); *Travelers Insurance Co.*, 1993 WL 34757, at *3 ("[T]he relief sought by Travelers

6    will not inevitably lead to an additional appropriation of state funds.  TSRT ["Teacher Retirement

7    System of Texas"] argues that because the State of Texas contributes to TRST's fund, any

8    judgment will impact the state's sovereignty.  While it is undisputed that the State of Texas

9    contributes . . . each year on its school system employees' behalf, this fact alone is not

10    dispositive.").

11       In *Boatmen's* — a state pension fund case that CalPERS does not cite — the district court

12    in Missouri held that the fact that the State of Kansas made contributions to KPERS was not

13    enough to establish an impact on the state treasury.  915 F. Supp. at 137 ("While the State of

14    Kansas does provide a significant percentage of KPERS' total employer contributions, the

15    existence of significant state financial support for a state-connected entity is not dispositive. . . .").

16    Nor could KPERS establish any impact on the state treasury by relying on the mere possibility

17    that the State of Kansas would someday be called upon to fund a shortfall in the system.  *See id.*

18    at 137-38 ("[T]o show a greater connection to the state treasury, KPERS relies on a more

19    attenuated scenario — the theoretical possibility that someday KPERS will incur an enormous

20    judgment that will require it to increase the rate of employer contributions to make up the

21    shortfall. . . .  The mere possibility of having to pay for a judgment is simply not good enough.").

22    Here, CalPERS has not even suggested — presumably because it cannot — that any recovery in

23    this action will benefit the State of California.

24       Similarly, where an entity's obligations are its own, this fact will weigh against a finding

25    that an entity is an arm of the State.  *See Durning* v. *Citibank, N.A.*, 950 F.2d 1419, 1425-26 (9th

26    Cir. 1991) ("When a state entity is structured so that its obligations are its own special obligations

27    and not general obligations of the state, that fact weighs against a finding of sovereign immunity

28    under the arm of the state doctrine."); *see also Holz* v. *Nenana City Public School District*, 347

DEFENDANTS' OPPOSITION TO MOTION TO REMAND

No. 09-03628-SI

1    F.3d 1176, 1182 (9th Cir. 2003). Not only are CalPERS funds restricted for use by CalPERS, but

2    CalPERS must pay its own administrative expenses out of interest income from the fund. *See*

3    Cal. Gov't Code § 20173. These administrative expenditures amounted to more than $315

4    million for 2007–2008. *See* Biderman Decl., Ex. L ("Facts at a Glance") at 2. None of the

5    budget for these expenditures comes from "state funds." *See* Biderman Decl., Ex. P (Governor's

6    Budget 2009–2010, 1900 Public Employees' Retirement System). There is simply no argument

7    that any judgment in this case will have any impact on the California State Treasury.

8              **B.     CalPERS Does Not Perform a Central Government Function.**

9              An evaluation of whether CalPERS performs a central government function also weighs

10   against a finding that CalPERS is an arm of the state or "alter ego." CalPERS asserts that, simply

11   because it exists to provide retirement and related benefits to public employees, it exists for a

12   governmental purpose. (Remand Br. at 7) (citing Cal. Gov't Code § 20001 ("The purpose [is] to

13   effect economy and efficiency in the public service . . . and to that end provide a retirement

14   system consisting of retirement compensation and death benefits.")). Courts confronted with this

15   issue under similar facts have held that the provision of retirement benefits does not constitute a

16   central governmental purpose, but instead serves a primarily proprietary function to preserve and

17   increase the value of a trust fund. *See Boatmen's*, 915 F. Supp. at 139 (holding that statutory

18   language stating that the purpose of "effecting economy and efficiency in the administration of

19   governmental affairs" was merely secondary to the provision of retirement benefits to

20   participating employees). The obligation of CalPERS to invest its funds in accordance with its

21   fiduciary duties to its members, similarly serves a proprietary, rather than a central government,

22   function.[10]

23   _____

24            [10]  CalPERS contends that because it is "a unit of the State and Consumer Services
     Agency," it should be characterized as an arm of the State. (Remand Br. at 7). The mere fact that
25   a state statute creates an entity — or even refers to an entity as a "state agency" or "arm of the
     state" — does not make it so for purposes of a jurisdictional analysis. *See Kitchen* v. *Upshaw*,
26   286 F.3d 179, 183-85 (4th Cir. 2002) (holding that Virginia's Regional Jail Authority, which
     exists pursuant to Va. Code Ann. § 53.1-95.2, is *not* an arm of the State) ("[T]he state law scheme
27   does not appear to treat the Authority as an arm of the State"); *Lynch* v. *San Francisco Housing
     Authority*, 55 Cal. App. 4th 527, 535-36 (1997) ("[W]e are not persuaded that identifying an
28   entity as a state agency is synonymous with identifying that entity as an arm of the state. . . . [A]t
     least one court has stated that even if a state statute characterizes an entity as an arm of the state

                                                      15
     DEFENDANTS' OPPOSITION TO MOTION TO REMAND
     No. 09-03628-SI

1    Moreover, in assessing whether an entity performs a *central* governmental function, courts

2    look to whether the entity "addresses 'a matter of statewide rather than local or municipal

3    concern' and 'the extent to which the state exercises centralized governmental control over the

4    entity.'" *See Beentjes* v. *Placer County Air Pollution Control District*, 397 F.3d 775, 782 (9th

5    Cir. 2005) (citations omitted). If an entity is granted "substantial autonomy in carrying out its

6    duties," this factor will weigh in favor in of finding that the entity is not an arm of the state. *Id.* at

7    783 & n.9.

8    Here, it is clear that CalPERS exists for the benefit of not only (or even primarily) State

9    employees, but also to serve employees of local public agencies that contract with CalPERS, as

10   well as employees of locally constituted school districts. Each of these constituencies has a role

11   in CalPERS governance. Because CalPERS serves the interests of all of its members, the

12   majority of whom are municipal or local employees and *not* state employees (*see supra* pp. 3-4),

13   it necessarily serves more than just state employee interests and performs a function that is not

14   inherently "a central governmental" one. *Id.*

15   Nor does the State of California exercise centralized control over CalPERS. By enacting

16   Proposition 162, California voters expressly sought to free CalPERS from State control, thereby

17   creating a unique entity with unprecedented independent authority and autonomy. *See* Biderman

18   Decl., Ex. Q, Analysis of November 1992 Ballot Propositions, California Senate Office of

19   Research, at 20 ("Public retirement systems will thus have a great deal more independence should

20   the proposition be approved by the voters. *No other entity part of, or created by, state*

21   *government currently has such exclusive authority.*") (emphasis added). As noted, the text of

22   Proposition 162, the analysis offered during the campaign preceding its passage, and CalPERS's

23   response to its passage, all leave no doubt as to its purpose and effect — to clarify that CalPERS

24   exists to serve its members, *not* the State of California, and to provide CalPERS with the

25   independence and autonomy from the State of California required to execute CalPERS's fiduciary

26

---

27   that designation is not conclusive, but instead is just a factor the court may consider."). The arm
     of the state/alter ego inquiry generally arises only where an entity is created by state law and has
     some relationship to government. These circumstances are only the starting point for the inquiry,

28   not the answer to the inquiry.

DEFENDANTS' OPPOSITION TO MOTION TO REMAND
No. 09-03628-SI

1    duties to its members without risk of "raids" by the State. *See* The California Pension Protection

2    Act of 1992, § 2(f); Analysis of November 1992 Ballot Propositions, California Senate Office of

3    Research (Aug. 1992), at 19 ("Proposition 162 would give retirement system boards, including

4    PERS, sole and exclusive authority over the administration of their systems. *This would have the*

5    *effect of removing retirement systems within the hierarchy of particular agencies, eliminating*

6    *most (if not all) of the powers of oversight and the limited, related degree of control that the*

7    *creating/authorizing bodies currently hold.*") (emphasis added).

8         In passing Proposition 162, the voters of California granted CalPERS this increased

9    independence and autonomy, including:

10           •   granting the Board "sole and exclusive power" over the investment and

11               management of pension funds;

12           •   making clear that the Board's duty to CalPERS's participants and

             beneficiaries trumps any other duty that the Board may have;

13           •   preventing the Governor or Legislature from making changes to the Board

14                without the consent of voters;

15           •   restricting the use of assets to use "exclusively" for the benefit of

             CalPERS; and

16           •   granting the Board "sole and exclusive direction" over the actuarial

17                determinations of contribution amounts to CalPERS.

18   *See* California Pension Protection Act of 1992, §§ 3(b)-(g); *see also* Cal. Gov't Code

19   §§ 20176, 20177.  CalPERS has used its plenary authority and exclusive control over the PERS

20   fund not only to control its own budget, but to issue its own debt, as well as to guarantee loans to

21   third parties. *See* Biderman Decl., Ex. R.

22        That CalPERS manages funds on behalf of not just State employees, but other public

23   employees, further undermines its assertion that it is an alter ego of the State. *See Roche* v.

24   *Lincoln Property Co.*, 175 Fed. Appx. 597, 601 (4th Cir. 2006) ("[State of Wisconsin Investment

25   Board] currently manages over forty separate investment funds, including funds consisting of

26   money from various state agencies, funds consisting of money from municipalities, and funds

27   consisting of money from current and retired state employees.").  In holding that the State of

28   Wisconsin Investment Board ("SWIB") — and in particular a retirement trust fund managed by

DEFENDANTS' OPPOSITION TO MOTION TO REMAND
No. 09-03628-SI

1   SWIB — was not an arm of the state, and thus a citizen for diversity purposes, the Fourth Circuit

2   relied upon the variety of funding sources as well as upon the fact that expenses associated with

3   the management of the fund were paid by the fund, rather than the State Treasury. *Id.* As noted,

4   CalPERS pays its administration expenses out of its investment income. *See* Cal. Gov't Code

5   § 20173 ("Costs of administration of this system shall be paid from funds appropriated for interest

6   income from the retirement fund.").

7           **C.**     **The Other *Mitchell* Factors Weigh Against a Finding That CalPERS Is an Arm or "Alter Ego" of the State.**

8

9         The final factors used by the *Mitchell* Court — whether the entity can sue or be sued,

10   whether the entity can take property in its own name or only in the name of the State, and the

11   corporate status of the entity — also weigh against finding that CalPERS is an arm or alter ego of

12   the State.

13         As is evident from the present lawsuit, as well as from the many securities cases brought

14   by CalPERS in its own name and on behalf of all shareholders as class representative, CalPERS

15   has the ability to sue and be sued. For example, CalPERS has not claimed to be asserting the

16   State of California's interests in the various class action lawsuits in which it has sought to be

17   appointed lead plaintiff. *See, e.g.*, *California Public Retirement System* v. *The Chubb Corp.*, 127

18   F. Supp. 2d 572, 574 (D.N.J. 2001) (asserting a "cause of action on behalf of all purchasers of

19   Chubb stock"); *In re Cendant Corp. Securities Litigation*, 109 F. Supp. 2d 235, 240 (D.N.J. 2000)

20   (purporting to act, as Lead Plaintiff, "on behalf of all persons and entities who purchased or

21   acquired Cendant"). And CalPERS has — and exercises — the authority to settle cases on its

22   own behalf. *See, e.g.*, Biderman Decl., Ex. S (*CalPERS, UnitedHealth Group Reach $895*

23   *Million Settlement in Class-Action Case, available at* http://www.calpers.ca.gov/index.jsp?bc=/

24   about/press/pr-2008/jul/UnitedHealth-reach-settlement.xml (July 2, 2008)).

25         Similarly, CalPERS can, in fact, take property in its own name and make its own

26   investment decisions. *See* Cal. Const. art. 16, § 17 ("[T]he retirement board of a public pension

27   or retirement system shall have plenary authority and fiduciary responsibility for investment of

28   moneys and administration of the system . . .").

DEFENDANTS' OPPOSITION TO MOTION TO REMAND
No. 09-03628-SI

D.   **Cases Involving Pension Funds and Other Entities Support the Conclusion That CalPERS Is Not an Arm of the State of California.**

Courts have regularly applied an Eleventh Amendment analysis to hold that state entities governed by statutory provisions similar to those that provide CalPERS its independence are not arms of the state for diversity purposes.  Thus, in *Roche, supra,* the Fourth Circuit considered whether SWIB — including a retirement trust fund managed by SWIB — was an arm of the state for diversity purposes.  Confronted with a system that provided SWIB with "considerable autonomy from the State of Wisconsin," including through statutory protections similar to those afforded CalPERS, the Fourth Circuit held that SWIB was not an arm of the state, and thus was a citizen for diversity purposes. 175 Fed. Appx. at 601 (noting, *inter alia,* that "SWIB is an 'independent agency' of the State, with the responsibility to (1) sue and be sued in its own name; (2) manage its assets; (3) pay its liabilities; (4) promulgate rules and regulations; and (5) formulate its investment policies").  As discussed above, each of those factors applies to CalPERS as well.

As noted in the discussion of the *Mitchell* factors above, other cases — none of which CalPERS cites — have similarly found, based on the particular character of the pension fund presented, that state retirement systems should not be treated as an arm or "alter ego" of the state for Eleventh Amendment purposes. *See Almond* v. *Boyles,* 612 F. Supp. at 228; *In re Lyons,* 118 B.R. at 638-39; *Travelers Insurance Co.,* 1993 WL 34757, at *3.  And courts in other contexts have held that an entity should be considered an arm or "alter ego" of the state only if it "functions *solely* as an agency of the State for the purpose of the operation and administration of [the entity], *for the State.*" *See Competitive Technologies,* 286 F. Supp. 2d at 1132 (emphasis added) (quoting *People ex rel. Board of Trustees of University of Illinois* v. *Barrett,* 46 N.E.2d 951, 962-63 (Ill. 1943)).  As already established, that is definitively *not* the case here:  CalPERS is an independent body whose duties are ultimately to its members — and *not* the State.

DEFENDANTS' OPPOSITION TO MOTION TO REMAND
No. 09-03628-SI

E.    **The Cases Cited by CalPERS Addressing Its Status (Or That of Other Public Retirement Systems) Using an Eleventh Amendment Analysis Do Not Provide a Basis for Ignoring the *Mitchell* Analysis.**

CalPERS does not cite to a single case in any context that examines *its* status as a potential "arm of the state" (Remand Br. at 9-10) that also considers the effect that Proposition 162 has on that status. Nor do any of the cases cited by CalPERS that consider the status of *other* public retirement systems (Remand Br. at 11-12) address whether a retirement system that operates with the independence, autonomy and paramount fiduciary duty of CalPERS should be treated as an "arm of the state" or rather as an independent entity capable of asserting claims in its own name and for the sole benefit of its beneficiaries. Indeed, those very cases only highlight how dependent the inquiry is on the specific circumstances of the retirement system involved.

CalPERS relies heavily on the Florida district court's decision in *State of California Public Employees' Retirement System* v. *Stride Rite Children's Group*, Civ. No. 96-6558 (slip op.) (S.D. Fla. Dec. 3, 1996). (Remand Br. at 5)[11] But reliance on the *Stride Rite* ruling is unwarranted since that Court failed to consider Proposition 162 at all, and never considered the actual character of CalPERS post-Proposition 162. Although decided after the passage of Proposition 162, the court in *Stride Rite* did not address Proposition 162 in its analysis, nor was any explanation of Proposition 162 briefed in the case by CalPERS itself or any other party. *See* Biderman Decl., Ex. P ("Memorandum by Defendant Stride Rite in Opposition to Plaintiff's Motion to Remand"). Moreover, the *Stride Rite* court did not analyze the impact that CalPERS's paramount duties to its members as opposed to the State might have on CalPERS's status. Given the absence of any discussion or consideration of the fundamental features of CalPERS, the *Stride Rite* decision provides no meaningful guidance here. And, it should be noted, CalPERS has

---

[11] CalPERS's description of the *Stride Rite* decision as finding "that federal *subject matter* jurisdiction turned on 'whether CALPERS is properly classified as . . . an 'arm of the state'" (Remand Br. at 10, emphasis added) is somewhat misleading. In that case, CalPERS took pains not to challenge citizenship. Instead, it framed the issue as, and the Court focused on, "[w]hether the Eleventh Amendment protects CalPERS." *Stride Rite* slip op. at 3; *see also* Remand Br. at 9; *Stride Rite* slip op. at 2 ("CalPERS now requests this Court remand this cause on the grounds that CalPERS is a state agency which, pursuant to the Eleventh Amendment to the United States Constitution, is *immune from suit* in Federal Court.") (emphasis added).

DEFENDANTS' OPPOSITION TO MOTION TO REMAND
No. 09-03628-SI

1   continued to invoke diversity jurisdiction when it suits its purposes in the years since *Stride Rite*

2   was decided. *See* Biderman Decl., Exs. G–K.

3       Other cases cited by CalPERS addressing whether CalPERS is entitled to sovereign

4   immunity under the Eleventh Amendment (Remand Br. at 9-10) do not meaningfully bear on the

5   present motion. Most fundamentally, none of these decisions includes the type of detailed

6   analysis of CalPERS's circumstances that an Eleventh Amendment approach to the "arm of the

7   state" question requires. In any event, CalPERS overstates the court's holding in *Kaplan* v.

8   *California Public Employees' Retirement System*, No. C 98-1246, 1998 WL 575095, at *3 (N.D.

9   Cal. Sept. 3, 1998). *See* Remand Br. at 10. In that case, the court turned directly to the question

10  of whether Congress had abrogated state sovereign immunity. *Id.* Because the State itself was a

11  party to the action, the court needed to confront this issue regardless of whether CalPERS was

12  considered an arm of the State or "alter ego." Indeed, the fact that CalPERS was sued in addition

13  to the State itself is consistent with CalPERS's status as an independent entity, and not merely an

14  arm or "alter ego" of the State.[12]

15      None of the cases that CalPERS cites that examine other public retirement systems

16  (Remand Br. at 11-12) warrants treating CalPERS as an arm of the state on the facts presented

17  here. Each of the cases cited by CalPERS — to the extent they include any discussion of the

18  relevant facts — addresses circumstances very different from those at issue in this case; none

19  addresses whether a retirement system with the autonomy and obligations of CalPERS is an "arm

20  of the state."

21      In *Ernst* v. *Rising*, 427 F.3d 351 (6th Cir. 2005), for example, a case that divided an *en*

22  *banc* panel of the Sixth Circuit, there is no indication that the Michigan Judges Retirement Board

23  was charged with the same degree of fiduciary obligations and autonomy provided to CalPERS.

24  Indeed, in finding that the Retirement Board was an "arm of the state" for purposes of sovereign

25

26      [12]   Another case cited by CalPERS in the Eleventh Amendment context — *Retired*
    *Public Employees' Association of California* v. *State of California*, 614 F. Supp. 571 (N.D. Cal.
27  1984) — is similarly inapposite. Not only was the decision issued prior to the adoption of
    Proposition 162 in 1992, but as CalPERS acknowledges, the court did not rule directly on the
28  issue of whether CalPERS should be afforded sovereign immunity at all. *Id.* at 581.

DEFENDANTS' OPPOSITION TO MOTION TO REMAND
No. 09-03628-SI

1   immunity, the Sixth Circuit specifically noted, *inter alia*, that the Michigan State Department of

2   Management and Budget within which the Retirement Board resided (and not the Board itself)

3   was responsible for the "management functions of the retirement system" and that the State

4   Treasurer was responsible for investment of the retirement funds at issue. *Id.* at 360.  CalPERS,

5   of course, is a very different beast.

6      The same reality holds true with respect to the other cases cited by CalPERS for the

7   proposition that it is an arm of the state.  None addresses a retirement system explicitly charged

8   by a state constitution with "plenary" authority to manage its own affairs nor one that oversees

9   retirement funds explicitly protected by the state constitution from interference by governmental

10  bodies, let alone a retirement system that is directed to exercise its fiduciary obligations "over any

11  other duty."  *See, e.g., Fitzpatrick* v. *Bitzer*, 519 F.2d 559, 565 (2d Cir. 1975) (Connecticut

12  retirement system had "none of the indicia of independence from the state, such as separate

13  incorporation *or power to sue in its own name*") (emphasis added), *rev'd on other grounds*, 427

14  U.S. 445 (1976); *McGinty* v. *New York*, 251 F.3d 84, 95-100 (2d Cir. 2001) (considering New

15  York's retirement system, including the statutory scheme identifying permissible and

16  impermissible investments); *JMB Group Trust IV* v. *Pennsylvania Municipal Retirement System*,

17  986 F. Supp. 534 (N.D. Ill. 1997) (considering Pennsylvania retirement system); *Public*

18  *Employees Retirement Sys.* v. *Boatmen's First National Bank*, 982 F. Supp. 806 (D. Kan. 1997)

19  (finding, at odds with the holding of the court in the Western District of Missouri, that KPERS is

20  an arm of the state);[13] *Mello* v. *Woodhouse*, 755 F. Supp. 923, 926-27 (D. Nev. 1991) (finding,

21  with no analysis, that the Nevada retirement system would generally be entitled to invoke

22  sovereign immunity); *United States* v. *South Carolina*, 445 F. Supp. 1094, 1100 (D.S.C. 1977)

23  (stating, with no discussion, that "[t]he state agencies, by the nature of their responsibilities,

24  function as an arm or "alter ego" of the State and are, therefore, protected by the State's

25

26   [13]     Notably, presented with the very same facts that led the Kansas district court to
     find (in the decision cited by CalPERS) that KPERS was an arm of the state, in the Boatmen's
27   decision discussed in more detail above, the District Court for the Western District of Missouri
     reached the opposite conclusion:  KPERS is *not* an arm of the state.  *See Boatmen's*, 915 F. Supp.
28   at 137-38.

DEFENDANTS' OPPOSITION TO MOTION TO REMAND
No. 09-03628-SI

1    immunity"); *21 Properties, Inc.* v. *Romney*, 360 F. Supp. 1322 (N.D. Tex. 1973) (considering

2    New York retirement system).

3            It is clear that the individual structure and function of a State pension fund, like other

4    government created entities, must be examined to determine whether the entity is so at one with

5    the State that created it as to be its mere "alter ego" or whether it has an independence and

6    separateness of duty that belies that description.  Given the circumstances — the nature and

7    structure of CalPERS under the State Constitution and laws and CalPERS's own prior view as to

8    its status as expressed in sworn pleadings — CalPERS is, as it itself has urged in the past, an

9    independent entity subject to diversity jurisdiction.

10                                            **CONCLUSION**

11           For the foregoing reasons, Plaintiff's motion to remand should be denied.

12   ///

13   ///

14   ///

15   ///

16   ///

17   ///

18   ///

19   ///

20   ///

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

DEFENDANTS' OPPOSITION TO MOTION TO REMAND
No. 09-03628-SI

1    DATED:  October 19, 2009                 Respectfully Submitted,

2
                                              /s/  David T. Biderman
3                                             David T. Biderman (SBN 101577)
                                              Farschad Farzan (SBN 215194)
4                                             **PERKINS COIE LLP**
                                              Four Embarcadero Center, Suite 2400
5                                             San Francisco, CA  94111
                                              Telephone: (415) 344-7000
6                                             Facsimile: (415) 344-7050

7                                             Floyd Abrams (*admitted pro hac vice*)
                                              Dean Ringel (*admitted pro hac vice*)
8                                             Adam Zurofsky (*admitted pro hac vice*)
                                              **CAHILL GORDON & REINDEL LLP**
9                                             80 Pine Street
                                              New York, New York 10005
10                                            Telephone: (212) 701-3000
                                              Facsimile: (212) 269-5420
11
                                              Attorneys for The McGraw-Hill
12                                            Companies, Inc.

13

14                                                            /s/
                                              Keith E. Eggleton (SBN 159842)
15                                            David A. McCarthy (SBN 226415)
                                              **WILSON SONSINI GOODRICH & ROSATI**
16                                            Professional Corporation
                                              650 Page Mill Road
17                                            Palo Alto, CA 94304
                                              Telephone:  (650) 493-9300
18                                            Facsimile:  (650) 565-5100

19                                            Joshua M. Rubins (*pro hac vice* application to be
                                              submitted)
20                                            James J. Coster (*pro hac vice* application to be
                                              submitted)
21                                            Glenn C. Edwards (*pro hac vice* application to be
                                              submitted)
22                                            **SATTERLEE STEPHENS BURKE & BURKE LLP**
                                              230 Park Avenue, 11th Floor
23                                            New York, New York  10169
                                              Telephone:  (212) 818-9200
24                                            Facsimile:  (212) 818-9606

25                                            Attorneys for Moody's Corp. and Moody's Investors
                                              Service, Inc.
26

27   70164-0006/LEGAL17157571.1

28

                                    24