Joseph J. Tabacco, Jr. (75484)
Email: jtabacco@bermandevalerio.com
James Magid (233043)
Email: jmagid@bermandevalerio.com
**BERMAN DeVALERIO**
425 California Street, Suite 2100
San Francisco, CA 94104
Telephone: (415) 433-3200
Facsimile: (415) 433-6382

*Attorneys for Plaintiff California Public
Employees' Retirement System*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA PUBLIC EMPLOYEES' RETIREMENT SYSTEM, | Case No. CV 09-3628 SI |
| Plaintiff, | **PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO REMAND FOR LACK OF SUBJECT MATTER JURISDICTION** |
| v. | |
| MOODY'S CORP., MOODY'S INVESTORS SERVICE, INC., THE MCGRAW-HILL COMPANIES, INC., FITCH, INC., FITCH GROUP, INC., FITCH RATINGS, LTD. AND DOES 1 THROUGH 100, | Date: November 13, 2009
Time: 9:00 a.m.
Ctrm: 10
The Honorable Susan Illston |
| Defendants. | |

# **TABLE OF CONTENTS**

I.    SUMMARY OF REPLY ARGUMENTS .......................................................................1

II.   ARGUMENT.........................................................................................................................2

    A.   DEFENDANTS DO NOT DISPUTE THE MYRIAD WAYS
        STATE LAW TREATS CALPERS AS AN ARM OF THE STATE ....................2

    B.   PROP. 162, PASSED INTO LAW IN 1992, AFFIRMED THE
        STATUS QUO AND CHANGED NOTHING WITH RESPECT
        TO CALPERS' STATUS AS AN ARM OF THE STATE .....................................5

    C.   DEFENDANT'S IGNORE HOW CALIFORNIA COURTS HAVE
        TREATED PROP. 162 ...............................................................................................6

    D.   BALLOT INITIATIVES ARE EXERCISES OF LEGISLATIVE
        POWER, MAKING PROP. 162 ANOTHER EXAMPLE OF
        STATE CONTROL OVER CALPERS..................................................................7

    E.   THE COURTS THAT HAVE CONSIDERED THE ISSUE HAVE
        FOUND THAT CALPERS IS AN ARM OF THE STATE...................................7

    F.   UNDER ANY SET OF ELEVENTH AMENDMENT FACTORS,
        CALPERS IS AN ARM OF THE STATE ..............................................................9

        1.   A Money Judgment for CalPERS Will Favorably Impact the
            State Treasury ...............................................................................................9

        2.   CalPERS Performs a Central Government Function .................................11

        3.   The Other *Mitchell* Factors Similarly Establish CalPERS as
            an Arm of the State ....................................................................................12

    G.   THE ONE ADDITIONAL PLEADING TO WHICH
        DEFENDANTS POINT DOES NOT CREATE FEDERAL
        DIVERSITY JURISDICTION BECAUSE IT ALSO CONTAINS
        FACT ALLEGATIONS, NOT LEGAL FINDINGS OF
        CITIZENSHIP FOR DIVERSITY PURPOSES...................................................13

    H.   THIS ACTION IS NOT REMOVABLE UNDER CAFA
        BECAUSE IT IS NEITHER A "CLASS" NOR "MASS" ACTION ...................13

III.  CONCLUSION....................................................................................................................15

1

## <u>TABLE OF AUTHORITIES</u>

2

**CASES**

*21 Props., Inc. v. Romney*, 360 F. Supp. 1322 (N.D. Tex. 1973) ...................................10

*Bd. of Admin. v. Wilson*, 52 Cal. App. 4th 1109 (1997) ...........................................3, 9

*Beentjes v. Placer County Air Pollution Control Dist.*, 397 F.3d 775 (9th Cir. 2005)..................12

*Befitel v. Global Horizons, Inc.*, 461 F. Supp. 2d 1218 (D. Haw. 2006).........................9

*Belanger v. Madera Unified School Dist.*, 963 F.2d 248 (9th Cir. 1992)......................12

*Boatmen's First Nat'l Bank v. Kan. Pub. Employees Ret. Sys.*,
   915 F. Supp. 131 (W.D. Mo. 1996).........................................................................10

*Ernst v. Rising*, 427 F.3d 351 (6th Cir. 2005).........................................................10, 11

*Fitzpatrick v. Bitzer*, 519 F.2d 559 (2d Cir. 1975)..........................................................10

*Gaus v. Miles, Inc.*, 980 F.2d 564 (9th Cir. 1992) ...........................................................1

*Haywood v. Am. River Fire Prot. Dist.*, 67 Cal. App. 4th 1292 (1998) .........................11

*In re New England Mut. Life Ins. Co. Litig.*, 841 F. Supp. 345 (W.D. Wash. 1994).....................15

*JMB Group Trust IV v. Pa. Mun. Ret. Sys.*, 986 F. Supp. 534 (N.D. Ill. 1997).............................12

*Kan. Pub. Employees Ret. Sys. v. Boatmen's First Nat'l Bank*,
   982 F. Supp. 806 (D. Kan. 1997).....................................................................10, 11

*Kansas Pub. Employees Ret. Sys. v. Reimer & Koger Assocs.*,
   941 P.2d 1321 (Kan. 1997)..............................................................................11

*McGinty v. N.Y.*, 251 F.3d 84 (2d Cir. 2001)..................................................10, 11, 12

*Mitchell v. L.A. Cmty. College Dist.*, 861 F.2d 198 (9th Cir. 1988) ................................9

*Retired Pub. Employees' Ass'n, Chapter 22 v. Cal.*, 614 F. Supp. 571 (N.D. Cal. 1984)................8

*State ex rel. Pension Obligation Bond Comm. v. All Persons Interested*,
   152 Cal. App. 4th 1386 (2007) .........................................................................7

*Valdes v. Cory*, 139 Cal. App. 3d 773 (1983) ................................................................9

*Westly v. Bd. of Admin.* 105 Cal. App. 4th .........................................................2, 3, 6, 9

*Wolf v. Mitchell*, 76 Cal. App. 4th 1030 (1999)........................................................15

**UNREPORTED CASES**

*Dep't of Fair Employment & Hous. v. Lucent Techs., Inc.*,
   No. C 07-3747, 2007 U.S. Dist. LEXIS 77360 (N.D. Cal. Oct. 9, 2007) ...................................12

*Kaplan v. Cal. Pub. Employees' Ret. Sys.*,
   No. C 98-1246, 1998 U.S. Dist. LEXIS 14040 (N.D. Cal. Sept. 3, 1998) .................................8

*Regents of the Univ. of Cal. v. Indem. Ins. Co. of N. Am.*,
   No. C 07-02721, 2007 U.S. Dist. LEXIS 58700 (N.D. Cal. Aug. 3, 2007) .............................12

*State of Cal. Pub. Employees' Ret. Sys. v. Stride Rite Children's Group, Inc.*,
   No. 96-6558-CIV-DAVIS (slip op.) (S.D. Fla. Dec. 3, 1996) .................................................5, 7

**STATUTES**

28 U.S.C. § 1332(d) ...........................................................................................................................1

28 U.S.C. § 1332(d)(11)(B)(i) ........................................................................................................14

28 U.S.C. § 1453 ...............................................................................................................................1

76 AM. JUR. 2D *Trusts* § 612 (2008) .............................................................................................14

CAL. CONST. ART. IX, § 9(f)............................................................................................................13

CAL. CONST. art. XVI, § 17..............................................................................................................5

CAL. CONST. art. XVI, § 17(g).........................................................................................................3

CAL. GOV'T CODE § 12652(c)(1) .....................................................................................................4

Cal. Gov't Code § 12652(c)(6)(A) ...................................................................................................4

CAL. GOV'T CODE § 20001 .............................................................................................................11

CAL. GOV'T CODE § 20002 ...............................................................................................................4

CAL. GOV'T CODE § 20090 ...............................................................................................................3

CAL. GOV'T CODE § 20170 ...............................................................................................................2

CAL. GOV'T CODE § 20177 ...............................................................................................................2

CAL. GOV'T CODE § 20232 ...............................................................................................................3

CAL. GOV'T CODE § 20237 ...............................................................................................................3

CAL. GOV'T CODE § 20238 ...............................................................................................................3

CAL. GOV'T CODE § 20281.5(b) .......................................................................................................3

CAL. GOV'T CODE § 20814 ...............................................................................................................3

1  CAL. GOV'T CODE § 75107 .................................................................................................3, 9

2  CAL. GOV'T CODE § 7513.5 ...................................................................................................3

3  CAL. GOV'T CODE § 7513.6 ...................................................................................................3

4  California Pension Protection Act of 1992, § 3(g) .........................................................5

5  S. REP. NO. 109-14.............................................................................................................15

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Plaintiff State of California Public Employees' Retirement System ("Plaintiff" or "CalPERS") respectfully submits this Reply Memorandum in Support of its Motion to Remand for Lack of Subject Matter Jurisdiction ("Reply").[1]

## I.   SUMMARY OF REPLY ARGUMENTS

This is not a close call.  As the removing parties, Defendants have failed to overcome the strong presumption against removal.  *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) ("The 'strong presumption' against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper.").  Nothing in Defendants' Opposition memoranda leads to any other conclusion but that CalPERS' lawsuit must be remanded to state court because CalPERS is an arm of the State of California and therefore not a citizen for purposes of diversity jurisdiction.  Absent diversity, no other basis—certainly not the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332(d), 1453 ("CAFA"), which even a majority of Defendants refuse to claim—exists to support subject matter jurisdiction in federal court.

In the only cases where courts have considered the issue, CalPERS has been found to be an arm of the state.  Defendants can point to no contrary authority.  Furthermore, the majority of federal courts which have decided the issue as to public pension funds in other states have held that those pension funds are arms of the state.  It is overwhelmingly so when the public pension fund has features similar to CalPERS.

Defendants agree it is a pure question of law:  whether an entity is an arm of the state is determined by looking to state laws creating and governing the entity.  Defendants, however, fail to address nearly all of the aspects of the California Constitution and Government Code, highlighted in CalPERS' Motion,[2] which operate to make CalPERS an arm of the state.  Instead

---

[1]  CalPERS submits one Reply in response to 1) the Corrected Memorandum of Law in Opposition to the Motion to Remand ("Defendants' Opposition" or "Def. Opp.") filed by Moody's Corp., Moody's Investors Service, Inc. ("Moody's") and the McGraw-Hill Companies, Inc. ("McGraw-Hill"), and joined by Fitch, Inc., Fitch Group, Inc. and Fitch Ratings, Ltd., ("Fitch") (collectively "Defendants"), and 2) Defendant Fitch's Memorandum of Points and Authorities in Opposition to Plaintiff's Motion to Remand for Lack of Subject Matter Jurisdiction ("Fitch's Opposition" or "Fitch Opp.").

[2]  Plaintiff's Notice of Motion and Motion to Remand for Lack of Subject Matter Jurisdiction, docket entry 12 ("Motion").

they claim that the question turns on Proposition 162 ("Prop. 162"). But Prop. 162 was not the event Defendants imagine. Indeed, Defendants completely ignore *Westly v. Board of Administration*, 105 Cal. App. 4th 1095 (2003), where the California Court of Appeals describes the effect of Prop. 162 on public retirement systems in California.

The Eleventh Amendment factors, which the parties agree form some part of the analytics here, also weigh heavily in favor of CalPERS being an arm of the state. Significantly, a judgment for CalPERS in this action will favorably impact the California Treasury. Shortfalls to CalPERS' pension payment obligations must, by state law, be made up with money from the Treasury—a legal reality which Defendants ignore. Recovery of money damages here, to the extent it prevents subtraction from California's Treasury funds, will positively impact the Treasury.

Defendants point to one additional prior case where CalPERS was a party and a federal court sat in diversity. Like the other three such cases upon which Defendants first based removal, the case they point to now contains no judicial determination that CalPERS is not an arm of the state, nor did that legal issue ever arise. It therefore cannot impact the purely legal question here, notwithstanding Defendants' new argument that these prior pleadings "reflect" CalPERS state of mind on this question of law.

For the reasons set out in CalPERS' Motion, and those set forth herein, remand of this action to CalPERS' chosen forum in San Francisco Superior Court is required.

## II.   ARGUMENT

### A.   Defendants Do Not Dispute the Myriad Ways State Law Treats CalPERS as an Arm of the State

Defendants agree that the critical analysis on remand is to "look at Constitutional and statutory framework within which CalPERS exists" to determine if it is an arm of the state. Def. Opp. at 8. They then proceed to ignore the bulk of California law which, as CalPERS points out in its Motion, treats CalPERS as part of the state. They do not contest that, under the under the *Westly* decision, 105 Cal. App. 4th at 1116, "CalPERS is a part of the state."

Defendants further ignore that the benefits paid to CalPERS members are held and drawn from the Treasury. CAL. GOV'T CODE § 20170; CAL. GOV'T CODE § 20177 ("The board shall deposit monthly in the State Treasury to the credit of the retirement fund all amounts received by

it ….").   They fail to acknowledge the significance that the majority of the Board of Administration ("Board") consists of state government officials and their appointees, Motion at 8; CAL. GOV'T CODE § 20090, and that CalPERS is legally obliged to submit regular reports to the Legislature and Governor.   Motion at 8-9; CAL. GOV'T CODE § 20232 (annual financial statements to both Legislature and Governor); CAL. GOV'T CODE § 20237; CAL. GOV'T CODE § 20238.

Defendants do agree that the Legislature has the ongoing authority to limit the investments that CalPERS makes, even over the Board's objections.   *See* Def. Opp. at 10 and Corrected Declaration of David T. Biderman in Support of Defendants' Opposition to Motion to Remand ("Biderman Decl.") at 10.   In fact, the Legislature has done this before, and retains the power to do so again.   CAL. CONST. art. XVI, § 17(g); CAL. GOV'T CODE § 7513.5 (limiting investment in Northern Ireland); CAL. GOV'T CODE § 7513.6 (limiting investment in the Sudan, subject to Board's constitutional fiduciary duties).

Nor do Defendants pay heed to the fact that the California Legislature has been obligated to fund CalPERS for over 75 years. Indeed, the California Legislature is constitutionally obligated to fund, and cannot substantially impair, vested pension rights.   *Bd. of Admin. v. Wilson*, 52 Cal. App. 4th 1109, 1161-62 (1997).   Meanwhile the Legislature may increase, reduce, or otherwise alter the benefits for future employees. *See e.g.*, CAL. GOV'T CODE § 20281.5(b).

Defendants are flatly wrong when they assert that "[n]owhere in its Motion to Remand does CalPERS suggest that a recovery in this action will benefit the State of California in any way." Def. Opp. at 13.   To the contrary, CalPERS explained in its Motion, "if the CalPERS fund is insufficient to pay the benefits owed to state employees, the state is obligated to pay the money to pensioners from other sources." Motion at 7 (quoting *Westly*, 105 Cal. App. 4th at 1116).   This flows from the State's constitutional obligation to fund all vested benefits. *Bd. of Admin.*, 52 Cal. App. 4th at 1161-1162.   Any recovery of money in this lawsuit will benefit state coffers because it will relieve the State Treasury from having to fund any shortfall needed to cover members' vested benefits.   *See* CAL. GOV'T CODE § 20814; *see e.g.*, CAL. GOV'T CODE § 75107 (when

money in Judges' Retirement Fund is insufficient, "it shall be the duty and obligation of the Legislature to appropriate ... such sums as may be necessary to make the Judges' Retirement Fund fully sufficient to pay all of the obligations of the fund.").

Defendants' attempts to dispute that California law does not treat CalPERS as an arm of the state fail to persuade. Fitch, for example, argues that CalPERS characterizes itself as a unit of state government, and that the Court need not accept this characterization because it is "conclusory." Fitch Opp. at 4-5. However, it is the California Government Code, not CalPERS, that defines CalPERS as a unit of the California State and Consumer Services Agency ("SCSA"). *See* CAL. GOV'T CODE § 20002 ("This system is a unit of the State and Consumer Services Agency."). The statement is thus "conclusory" insofar as it is an accurate recitation of California law. CalPERS is *defined by state law* to be a unit of state government.

A recent reminder of CalPERS' status as an arm of the state can be seen in the California Attorney General's October 20, 2009 intervention in litigation against State Street Corporation on behalf of CalPERS and the California State Teachers' Retirement System ("CalSTRS"). *See* Declaration of James Magid ("Magid Decl."), Ex. A (attaching Atty. Gen.'s Complaint). The complaint, filed in a California Superior Court against defendants which include out-of-state corporations, alleges that the State Street Bank fraudulently priced foreign currency trades which they executed for the two pension funds, resulting in damages of over $56 million dollars. The California Attorney General brought the action pursuant to Cal. Gov't Code § 12652(c)(6)(A). Atty. Gen. Compl. at ¶ 6. Section 12652 authorizes the Attorney General to intervene in an action brought by a *qui tam* plaintiff "for the State of California in the name of the state, if any state funds are involved." CAL. GOV'T CODE § 12652(c)(1). The action defines CalPERS as "an agency of the State of California." Atty. Gen. Compl. ¶ 15. The Attorney General's action on CalPERS' behalf confirms that CalPERS' funds are "state funds." Further, it affirms CalPERS' legal status as an arm of the state of California.[3]

---

[3] Defendants' Opposition looks for support in the recent writ of mandate filed by CalPERS concerning Governor Schwarzenegger's orders directing the furlough of state employees, including those at CalPERS. *See* Def. Opp. at 13, Biderman Decl. Ex. O. CalPERS has protested the fact that the Governor acted without ratification from the Legislature and that the impact of

*Footnote continued on next page...*

**B.    Prop. 162, Passed Into Law in 1992, Affirmed the Status Quo and Changed Nothing With Respect to CalPERS' Status as an Arm of the State**

Defendants' Oppositions rely heavily on Prop. 162.  They cast it as a radical turning point in CalPERS' history that made CalPERS a separate entity from the state.  Defendants insist that the inquiry here "requires consideration of Prop. 162 and its impact on CalPERS' obligations and activities (a review that CalPERS assiduously avoids)."  Def. Opp. at 9.  However, clarification is called for concerning what Prop. 162 did and did not do.

Prop. 162 did preclude the Legislature from altering the boards of all California retirement systems without voter consent, and did return to CalPERS the authority over actuarial services that had been previously taken by the Legislature.  *See* CAL. CONST. art. XVI, § 17 (f)-(g).

These changes, however, did not alter CalPERS status as an arm of the state.  In fact, Defendants concede, as they must, that with regard to CalPERS' fiduciary duties to its members, Prop. 162 merely "reinforced" and "affirmed" the status quo.  *See* Def. Opp. at 9.  The language of the Proposition itself, quoted by Defendants, recites its "Purpose and Intent" as "[t]o *affirm* the legal principle that a retirement board's duty to its participants and beneficiaries takes precedence over any other duty."   California Pension Protection Act of 1992, § 3(g) (emphasis added).  Defendants even submitted materials to the Court which plainly admit that Prop. 162 "would not change current law, but would make it clearer in the Constitution what that law is."  Biderman Decl. Ex. R, p. 21.  This is hardly the momentous change Defendants make Prop. 162 out to be.

---

*Footnote continued from previous page...*

the furloughs impinges on CalPERS ability to meet its constitutionally prescribed fiduciary duties.  *See* Petition for Writ of Mandate, Biderman Decl. Ex. O.  Yet that action, too, is consistent with CalPERS' being an arm of the state.  CalPERS does not assert that the Governor's Executive Orders do not apply to it, rather that there is no legal basis for the furlough orders.  Indeed, while the matter is pending, CalPERS is complying with the Governor's orders directing furloughs.  The furloughs demonstrate the high degree of control exercised by the State of California over CalPERS—an affirmation that CalPERS is an arm of the state.  *See State of Cal. Pub. Employees' Ret. Sys. v. Stride Rite Children's Group, Inc.*, No. 96-6558-CIV-DAVIS (slip op.) at 4 (S.D. Fla. Dec. 3, 1996) (holding CalPERS is arm of state because, in part, California "exercises significant control over CalPERS") (Magid Decl. Ex. B).

**C.     Defendant's Ignore How California Courts Have Treated Prop. 162**

The *Westly* case is instructive.  There, the California State Controller brought an action to challenge certain actions CalPERS' Board had taken pursuant to the "plenary" authority given to it by Prop. 162 in amending Art. XVI, § 17 of the California Constitution.  Claiming authority under that section, CalPERS' Board had 1) exempted at least 10 portfolio managers from civil service, 2) issued its own warrants for the pay of its portfolio managers, 3) increased the compensation of the Board members, and 4) adopted an expense reimbursement policy that exceed limits under state law.  *Westly*, 105 Cal. App. 4th at 1104.  The State Controller claimed that Prop. 162 did not give the Board the authority to take these actions, and in fact that the California Constitution and other state law prevented them from doing so.  *Id.* at 1103-04.  The trial court agreed with the Controller, finding that:

> [T]he existing case law and the background materials, particularly the ballot arguments, clearly indicate that the voters had intended to stop the raiding of the pension funds, *not to grant [CalPERS] unlimited authority to ignore state laws governing state employees*.

*Id.* at 1104 (emphasis added).

The court of appeals affirmed.  It dismissed CalPERS' Board's reliance on Prop. 162's amendment of Art. XVI, § 17 of the California Constitution as giving it the authority to exempt portfolio managers from civil service.  *Id.* at 1109-10.  The appellate court concluded that:

> [W]ith regard to administration of the system, *the Board's authority is limited to actuarial services and to the protection and delivery of the assets, benefits, and services for which the Board has a fiduciary responsibility. No such power is given over the administration of the matters at issue here*.

*Id.* at 1110 (emphasis added).  In addition, the *Westly* court confirmed that CalPERS' money is in the Treasury, and thus can *only* be accessed through a warrant issued by Controller.  *Id.* at 1115-16.

**D.    Ballot Initiatives Are Exercises of Legislative Power, Making Prop. 162 Another Example of State Control Over CalPERS**

Defendants rely on Prop. 162 because they misapprehend the ballot initiative process in California.  Popular initiatives like Prop. 162 are legislative actions.[4]  Accordingly, statutes enacted by the Legislature, as well as those statutes and constitutional provisions enacted by the electorate through the ballot initiatives "are equally exercises of the legislative power of the State."  *State ex rel. Pension Obligation Bond Comm. v. All Persons Interested.*, 152 Cal. App. 4th 1386, 1403 (2007).  That CalPERS was affected at all by the legislative power of the State through a ballot initiative weighs *in favor* of CalPERS' status as an arm of the state, not against it, because it evinces state control.

**E.    The Courts That Have Considered the Issue Have Found That CalPERS Is an Arm of the State**

Defendants cannot point to a single judicial decision involving CalPERS where CalPERS is determined to *not* be an arm of the state—because none exists.  Additionally, Defendants fail to distinguish those cases where CalPERS has been determined to be an arm of the state.

In the on-point decision *State of California Public Employees' Retirement System v. Stride Rite Children's Group*, Civ. No. 96-6558 (slip op.),[5] Judge Davis dealt squarely with the question of whether CalPERS is an arm of the state.  The issue arose in the same removal/remand context as here, where diversity was the asserted basis for removal by the defendant.  Judge Davis found that (i) state law defines CalPERS as a unit of state government, (ii) the state "exercises significant control over CalPERS," and (iii) because the State of California is required by law to contribute money to the CalPERS fund, it is a "continuing obligation[] of the state."  Slip op at 4.  Accordingly, Judge Davis held CalPERS is an arm of the state and remanded the suit to state court.  *Id.* at 5.

---

[4] Article IV, § 1 of the California Constitution states that the legislative power of the State is vested in the Legislature, but that the people reserve to themselves the powers of initiative and referendum.  Under Article II, Section 8(a), the "initiative" is the "power of the electors to propose statutes and amendments to the Constitution and to adopt or reject them."

[5] Discussed in CalPERS' Motion at 9-10, and attached again here at Magid Decl. Ex. B.

1    Defendants try unsuccessfully to distinguish *Stride Rite*.  They argue that, although the

2  decision was rendered some four years after the passage of Prop. 162, Judge Davis "never

3  considered the actual character of CalPERS post-Prop. 162." Def. Opp. at 20.  But that is exactly

4  what Judge Davis did.  The *Stride Rite* holding was anchored in the California Government Code,

5  which *necessarily* portrayed CalPERS as it existed after Prop. 162.  Judge Davis weighed the

6  same California Government Code sections that CalPERS relies upon here.  If anything, the lack

7  of mention of Prop. 162 indicates that it was not the drastic overhaul Defendants claim it to be.

8    Two other decisions have concluded that CalPERS is an arm of the state in the context of

9  determining that CalPERS has standing to raise Eleventh Amendment Immunity—as only a state

10  or its alter ego can.  Here as well Defendants point to no contrary authority.  Defendants instead

11  contend that CalPERS "overstates" the holding of *Kaplan v. California Public Employees'*

12  *Retirement System,* No. C 98-1246, 1998 U.S. Dist. LEXIS 14040, at **7-9 (N.D. Cal. Sept. 3,

13  1998).  In *Kaplan*, the plaintiff's suit alleged that CalPERS' formula for calculating disability

14  retirement allowances violated federal law.  It named CalPERS and the State of California as

15  defendants.  CalPERS moved to dismiss, asserting Eleventh Amendment immunity, and the State

16  of California joined the motion.  *Id.,* at **6-7.  The decision on the motion made it clear that each

17  of the moving defendants had standing to raise Eleventh Amendment Immunity as a defense.  *Id.,*

18  at **7-9.

19    Similarly, *Retired Public Employees' Association, Chapter 22 v. California*, 614 F. Supp.

20  571, 581 (N.D. Cal. 1984) dealt with a challenge to the way CalPERS calculates benefit

21  payments.  Defendants included the State of California, the Controller of the State of California,

22  as well as CalPERS. *Id.* at 573. One of plaintiff's claims was for a "mandatory injunction

23  requiring the [CalPERS] Board to comply with terms of the Code." *Id.* at 581. The Court found it

24  had no jurisdiction to hear that claim, because defendants (including CalPERS) were immune

25  from suit in federal court under the Eleventh Amendment.  *Id*. By concluding that the Eleventh

26  Amendment precluded federal jurisdiction over that claim, the Court *necessarily* found that

27  CalPERS' Board had the standing and ability to raise such a defense to "a pendent state claim

28  against the state and *state officials and agencies.*" *Id.* (emphasis added).

**F.      Under Any Set of Eleventh Amendment Factors, CalPERS Is an Arm of the State**

The parties acknowledge that the Ninth Circuit has not directly ruled on the question on whether the factors used in a Eleventh Amendment immunity analysis should also be used in determining whether an entity is an arm of the state for diversity purposes.  *See Befitel v. Global Horizons, Inc.*, 461 F. Supp. 2d 1218, 1221 (D. Haw. 2006).  Even under the Eleventh Amendment analysis emphasized by Defendants—the so-called *Mitchell* factors—CalPERS is still an arm of the state.  *Mitchell v. L.A. Cmty. College Dist.*, 861 F.2d 198, 201 (9th Cir. 1988).[6]

**1.      A Money Judgment for CalPERS Will Favorably Impact the State Treasury**

Defendants contend the first *Mitchell* factor is in their favor, that factor being "whether a money judgment would be satisfied out of state funds."  *Mitchell*, 861 F.2d at 201.[7]  The question here is whether a money judgment for CalPERS in this action will favorably impact the California Treasury.  It will.  Consequently, this factor weighs heavily for CalPERS being an arm of the state.

As already discussed herein and in CalPERS' Motion, in the event CalPERS recovers the hundreds of millions in investment losses it seeks through this action, the California Treasury stands to benefit.  CalPERS and the State are obligated by the constitution to fund all members' vested rights.  *Bd. of Admin.*, 52 Cal. App. 4th at 1161-1162; *Valdes v. Cory*, 139 Cal. App. 3d 773, 787 (1983).  Consequently, if and when CalPERS' funds experience a shortfall and cannot meet pension payment obligations, the state is required by law to fund CalPERS' obligations from the Treasury. *See Westly*, 105 Cal. App. 4th at 1116 ("if the CalPERS fund is insufficient to pay the benefits owed to state employees, the state is obligated to pay the money to pensioners from other sources"); *see also* CAL. GOV'T CODE § 75107 (when money in Judges' Retirement Fund is insufficient "it shall be the duty and obligation of the Legislature to appropriate ... such

---

[6] Defendants do not seem to assert that CalPERS has any corporate status per the fifth *Mitchell* factor.

[7] Obviously this first *Mitchell* factor does not square well with diversity cases where the arm of the state is, as here, the plaintiff in the action. It contemplates the Eleventh Amendment circumstance, where the state or its alter ego is sued as a defendant in federal court.

1  sums as may be necessary to make the Judges' Retirement Fund fully sufficient to pay all of the

2  obligations of the fund."). A monetary recovery by CalPERS in this action will alleviate that

3  obligation to the extent any shortfall is experienced.

4  CalPERS pointed out in its Motion, and Defendants do not dispute, that in the majority of

5  other cases where a public pension fund has been a defendant in federal court, courts find they are

6  arms of the state. This is always the case when, as it is with California and CalPERS, the state is

7  obligated to pay vested benefits to the beneficiaries. This was true for the Michigan Retirement

8  System in *Ernst v. Rising*, 427 F.3d 351, 359 (6th Cir. 2005) (finding state has "contractual

9  obligation" to each retiree and "the State would be liable for any judgment against the retirement

10  system that existing funds of the system could not satisfy."). It was true for the New York State

11  Teachers' Retirement System in *21 Properties, Inc. v. Romney*, 360 F. Supp. 1322, 1326 (N.D.

12  Tex. 1973) ("Any money judgment rendered against the Retirement System would have to be

13  satisfied out of these public moneys, and the state would be required to increase its contributions

14  to the Retirement System in order to compensate for such judgment."). It was also true for the

15  Connecticut State Employees Retirement Commission in *Fitzpatrick v. Bitzer*, 519 F.2d 559, 565

16  (2d Cir. 1975) ("A judgment against the fund would thus automatically increase the obligations of

17  the general state treasury"). It was likewise true for the New York State and Local Employees'

18  Retirement System at issue in *McGinty v. New York*, 251 F.3d 84, 99 (2d Cir. 2001) ("Since the

19  state constitution mandates that the benefits of the Retirement System not be diminished or

20  impaired, the state will become responsible for replenishing monies used from the pension

21  accumulation fund and the other reserve funds to pay a judgment").[8]

22

23  [8] Defendants rely heavily on *Boatmen's First National Bank v. Kansas Public Employees
Retirement System*, 915 F. Supp. 131 (W.D. Mo. 1996), a decision coming one year before
another decision regarding KPERS. Defendants emphasize only the earlier KPERS decision that

24  concluded KPERS was not an arm of the state. In that decision, the court found the connection
between KPERS and the state coffers lacking because "no Kansas law obligates or authorizes the

25  State of Kansas to satisfy any judgment entered against KPERS or remedy any deficit incurred by
KPERS." *Id*. at 137. However, in its subsequent, superseding decision in *Kansas Public

26  *Employees Retirement System v. Boatmen's First National Bank*, 982 F. Supp. 806 (D. Kan.
1997), the court explained that during the interregnum between the two cases, the Supreme Court
of Kansas held that under Kansas law, the state was indeed obligated to pay for any shortfall in

27  KPERS' funding. In the subsequent decision, therefore, the federal court found KPERS
investments to be governmental in nature and that KPERS was in effect seeking "to recover

28  *Footnote continued on next page...*

### 2. CalPERS Performs a Central Government Function

Defendants contend that CalPERS' purpose is not one of government, but that the provision of retirement benefits to public employees is merely a "proprietary" function entirely divorced from government function. Def. Opp. at 15. Yet CalPERS' government purpose and function is plainly set forth in state law and recognized by California courts:

> The legislative purpose of public employee pension programs is well established. They "serve two objectives: to induce persons to enter and continue in public service, and to provide subsistence for disabled or retired employees and their dependents...."

*Haywood v. Am. River Fire Prot. Dist.*, 67 Cal. App. 4th 1292, 1304 (1998).

California law establishes that CalPERS' role is "to effect economy and efficiency in the public service." CAL. GOV'T CODE § 20001. Providing public service is co-terminus with playing a central governmental role. Indeed, courts find that identical or analogous legislative purposes behind other state retirement systems justify those retirement systems being treated as arms of the state in the Eleventh Amendment context. *See McGinty*, 251 F.3d at 97 (describing "the Retirement System as taking part in an important governmental function by 'providing retirement pensions, annuities and other employment benefits for its personnel, comparable to those received by the employees of private industry.'"); *Ernst*, 427 F.3d at 361 ("the retirement system's operations have far more in common with a traditional state function than a local one."); *Kan. Pub. Employees Ret. Sys.*, 982 F. Supp. at 808 ("The purpose of KPERS is not only to provide a retirement system for public employees, but also to effect 'economy and efficiency in the administration of governmental affairs.'").

Furthermore, the fact that CalPERS is open to employees of California schools and other public agencies does not render CalPERS an entity separate from the state.[9] In fact, this

---

*Footnote continued from previous page...*

millions of dollars which the public will otherwise be forced to pay in higher taxes." *Id.* at 809, citing *Kansas Pub. Employees Ret. Sys. v. Reimer & Koger Assocs.*, 941 P.2d 1321, 1342 (Kan. 1997). The earlier *Boatmen*'s decision on which Defendants rely is therefore irrelevant.

[9] CalPERS was originally established for the retirement of only state employees. In subsequent years, the benefits have expanded to include others, such as employees of California schools. *Valdes v. Cory*, 139 Cal. App. 3d 773, 781 (1983).

---

distinction was expressly rejected by the Second Circuit in *McGinty*.  Holding that the retirement system at issue is an arm of the state of New York, the *McGinty* court found that "although the Retirement System does not service state employees exclusively, it assists in the business of the state by enabling the state to meet its pension and benefits obligations, and immunity should accordingly be extended to the Retirement System." *McGinty*, 251 F.3d at 98.  Moreover, the fact that CalPERS manages the retirement and benefits of not just one locale or region, but for any and all contracting schools and public agencies across the entire state, weighs in favor of viewing CalPERS' function as one addressing "matter[s] of statewide rather than local or municipal concern." *Beentjes v. Placer County Air Pollution Control Dist.*, 397 F.3d 775, 782 (9th Cir. 2005).

### 3. The Other *Mitchell* Factors Similarly Establish CalPERS as an Arm of the State

CalPERS can sue and be sued in its own name.  Contrary to Defendants' argument, this is not dispositive, nor in this case, very indicative of the status of CalPERS given the governmental function it is tasked with.  *See JMB Group Trust IV v. Pa. Mun. Ret. Sys.*, 986 F. Supp. 534, 538 (N.D. Ill. 1997).  School districts, the Regents of the University of California, and other state agencies that have been found to be arms of the state, can also sue and be sued in their own name. *Belanger v. Madera Unified School Dist.*, 963 F.2d 248, 254 (9th Cir. 1992); *Regents of the Univ. of Cal. v. Indem. Ins. Co. of N. Am.*, No. C 07-02721, 2007 U.S. Dist. LEXIS 58700 (N.D. Cal. Aug. 3, 2007); *Dep't of Fair Employment & Hous. v. Lucent Techs., Inc.*, No. C 07-3747, 2007 U.S. Dist. LEXIS 77360, at *3 (N.D. Cal. Oct. 9, 2007) (the court recognizes that, as an agency of the State, [the Department of Fair Employment and Housing] is an 'alter ego' for purposes of diversity jurisdiction.").[10]

Nor does the ability to take property in its own name detract one iota from CalPERS' status and role as an arm of the state.  Again, California school districts and the Regents of the

---

[10] Defendants wrongly assert that CalPERS' involvement as a plaintiff in federal securities cases has significance here. It does not. Those cases involve federal subject matter jurisdiction, and not diversity jurisdiction.

University of California may take property in their own names, and enjoy "alter ego" status.  In fact, the Regents authority to do so is actually embedded in the California Constitution itself and, compared with CalPERS, is subject to much less control by the Legislature. CAL. CONST. ART. IX, § 9(f) ("The Regents of the University of California shall be vested with the legal title and the management and disposition of the property of the university and of property held for its benefit and shall have the power to take and hold, either by purchase or by donation, or gift, testamentary or otherwise, or in any other manner, without restriction, all real and personal property for the benefit of the university or incidentally to its conduct ....").

### G. The One Additional Pleading to Which Defendants Point Does Not Create Federal Diversity Jurisdiction Because It Also Contains Fact Allegations, Not Legal Findings of Citizenship for Diversity Purposes

Defendants again attach the same three pleadings they did in their notices of removal in an effort to establish federal diversity jurisdiction, and add a new complaint and answer from *Target Corporation v. CalPERS*, 02-cv-3776 (D.N.J.). As CalPERS argued in its Motion, the fact allegations in the pleadings are completely irrelevant.  CalPERS' past or present fact allegations concerning whether it is a citizen or an arm of the state are simply incapable of plumbing the central question of whether, as a matter of law, CalPERS is an arm of the state.  *See* Motion at 12. Defendants now agree that a purely legal question is at issue.  They nonetheless insist that fact allegations in complaints bear on the legal question, because they "reflect" CalPERS' state of mind.  If this were the case, then the fact allegation in CalPERS' complaint here, wherein CalPERS alleges it is an arm of the state and not a citizen for diversity purposes, would effectively end the inquiry.[11]

### H. This Action Is Not Removable Under CAFA Because it Is Neither a "Class" nor "Mass" Action

Finally, Fitch contends this action is removable under CAFA.  All the other Defendants once more decline to join this argument, and with good reason.  Fitch invites this Court to be the

---

[11] In addition, even in the one new case that Defendants have located since they filed their notice of removal, CalPERS actually asserts in its answer that it is "an agency of the State of California (not a corporation)."  Biderman Decl. Ex. K, at ¶ 3.

first in the country to adopt its breathtakingly broad interpretation of "mass actions" under CAFA, one that if carried to its logical ends, would sweep up individual actions brought by corporations, partnerships, trustees, and other types of organizations.  A reading of the plain language of CAFA's definition of "mass action," coupled with fundamental tenets of the law of trusts, demonstrates that the Court need not give the slightest credence to Fitch's argument, and should decline Fitch's invitation to make new law.

Fitch claims this case falls within the definition of a "mass action" removable under CAFA.  CAFA defines the term "mass action."[12]  Yet nowhere in its fifteen page memorandum does Fitch set out the definition, preferring instead to paraphrase the term generously for its own ends.  A reading of CAFA's definition of "mass action" makes it quickly apparent that this is not oversight, but intentional avoidance.  A "mass action," defined by CAFA

> means any civil action (except a civil action within the scope of section 1711(2) [28 USCS § 1711(2)]) in which *monetary relief claims of 100 or more persons are proposed to be tried jointly* on the ground that the plaintiffs' claims involve common questions of law or fact, except that jurisdiction shall exist only over those plaintiffs whose claims in a mass action satisfy the jurisdictional amount requirements under subsection (a).

28 U.S.C. § 1332(d)(11)(B)(i) (emphasis added).

According to the definition, a "mass action" is nothing more than individual actions that are proposed to be tried jointly.  This requires that an individual action be cognizable in the first place.  Here, CalPERS operates as a series of trusts, with the over 1.6 million members as beneficiaries.  Indeed, Defendants themselves insist in making their other argument that the CalPERS is a trust, with the Board having fiduciary duties to the beneficiaries.  It is black letter law, however, that ordinarily only the trustee has standing to bring an action for damages against a third party for damage to trust property.  *See, e.g.,* 76 Am. Jur. 2d *Trusts* § 612 (2008) ("Generally, it is the trustee who is the proper party to maintain an action in law or equity against a third person to remedy an injury with respect to the trust property, while beneficiaries of the trust cannot ...."); *In re New England Mut. Life Ins. Co. Litig.*, 841 F. Supp. 345, 348 (W.D.

---

[12] Fitch does not claim this action is a class action.

Wash. 1994) ("It is a fundamental tenet of trust law that it is the trustee of a trust, and not its beneficiaries, who have a cause of action against third parties for wrongdoing concerning trust property."); *Wolf v. Mitchell*, 76 Cal. App. 4th 1030, 1036 (1999).  Consequently, it was not possible for any of the 1.6 million CalPERS beneficiaries to sue the Defendants to recover CalPERS' investment losses stemming from Defendants negligent "AAA" ratings.  Without the possibility of individual actions by the beneficiaries, there is nothing to be tried jointly.  With no possibility of individual actions to be tried jointly, there is no "mass action."  Fitch's CAFA argument remains frivolous.[13]

**III.    CONCLUSION**

For the foregoing reasons and for those contained in CalPERS' Motion, CalPERS respectfully requests that the Court remand this action to San Francisco Superior Court.

Dated:  October 30, 2009

Respectfully submitted,

**BERMAN DeVALERIO**

By:  _____/S/_____
Joseph J. Tabacco, Jr.

James Magid
425 California Street, Suite 2100
San Francisco, CA  94104
Telephone:  (415) 433-3200
Facsimile:  (415) 433-6382

*Attorneys for Plaintiff California Public Employees' Retirement System*

---

[13] Fitch's fallback arguments under CAFA fare no better.  Fitch makes the claim that the rating agencies are too "important" in the national sense for a state court to hear this case. Fitch Opp. at 8-13.  "Importance" is not a basis of removal.  In fact the "significant national or interstate interest" factor they cite was only meant to provide guidance in "class actions in which more than one-third but fewer than two-thirds of the members of the plaintiff class and the primary defendants are all citizens of the state in which the action was filed." S. REP. NO. 109-14, at 36 (2005).  Fitch also cites federal regulations, but does not argue federal preemption.  Its argument that it is too "important" for state court has zero support from CAFA or any other statute, from case law, or even from Fitch's co-defendants.